■ JUDITH MANNO, Respondent, v RICHARD MANNO, Appellant. [637 NYS2d 743] —In a matrimonial action in which the parties were divorced by a judgment of the Supreme Court, Rockland County (Meehan, J.), entered February 28, 1991, the defendant former husband appeals from (1) an order of the same court, dated November 22, 1993, which (a) directed him to pay $1,615.26 per month in basic child support, (b) directed him to pay 53% of the children's unreimbursed medical and dental expenses, and (c) directed him to pay $1,000 per year per child in college expenses for those children who attend college; (2) an order of the same court dated November 24, 1993, which sequestered his Individual Retirement Account with Winchester Investment Securities, Inc., until such time as $75,000 from the account shall be transferred to the plaintiff former wife's attorneys as receivers therefor; (3) an order of the same court, dated December 23, 1993, which, *inter alia,* directed disbursements of several sums of money to the plaintiff former wife from the funds to be taken from the defendant's sequestered Individual Retirement Account; (4) a judgment of the same court, entered December 31, 1993, in favor of the plaintiff former wife and against the defendant former husband in the principal sum of $75,000; and (5) an Execution with Notice to Garnishee, dated December 30, 1993.

Ordered that the appeal from the Execution with Notice to Garnishee dated December 30, 1993, is dismissed, as no appeal lies therefrom *(see,* CPLR 5512 [a]); and it is further,

Ordered that the order dated November 22, 1993, is reversed, on the law and the facts; and it is further,

Ordered that the order dated November 24, 1993, is reversed, on the law, and the sequestration order is vacated; and it is further,

Ordered that the order dated December 23, 1993, is reversed, on the law; and it is further,

Ordered that the judgment dated December 31, 1993, is reversed, on the law, and the Execution with Notice to Garnishee issued pursuant thereto is vacated; and it is further,

Ordered that the defendant is awarded one bill of costs, and the matter is remitted to the Supreme Court, Rockland County, for a new determination, before a different Justice, of (a) the

defendant's basic child support obligation, as well as any obligation for educational expenses for the children for the period commencing November 28, 1990, up to and including April 29, 1993; and (b) a new hearing and determination on the parties' petitions filed in Family Court, Rockland County, on April 30, 1993, and May 19, 1993, respectively.

By decision and order dated August 2, 1993, this Court modified the judgment of divorce in this case and remitted the matter to the Supreme Court, Rockland County, for a new determination with respect to the defendant's basic child support obligation and any obligation for educational expenses for the children (see, Manno v Manno, 196 AD2d 488). The present appeals by the defendant stem from orders and judgments rendered by the Supreme Court after the remittitur.

On April 30, 1993, while the prior appeal was still pending, the defendant filed a petition in the Family Court, Rockland County, seeking downward modification of his support payments. In support of the petition, the defendant alleged that he lost his employment on December 15, 1992, and that he had "no current income (or negligible current income)" from his present employment (since April 5, 1993), which he alleged had "actually cost petitioner money due to commutation, etc., whilst he gains proficiency". The defendant also noted that two of the children—Anthony and Michael—attained the age of 21 years on or about January 10, 1993. In addition, the defendant sought to have the plaintiff pay for all or part of the unemancipated children's health insurance, since he had lost his health insurance benefits with the loss of his job.

On May 19, 1993, the plaintiff filed a petition in the Family Court, Rockland County, seeking enforcement of the defendant's support obligations contained in the judgment of divorce from which the defendant was appealing. The plaintiff alleged that the defendant had failed to pay any basic child support since March 1, 1993, and that there were arrears due in the amount of $3,552.50 as of May 13, 1993. She further alleged that the defendant had failed to pay his share of unreimbursed medical and dental expenses for the children, and that as of April 30, 1993, there were arrears in the amount of $1,330.13. The plaintiff also claimed that the defendant had failed to pay his share of the children's college expenses and that as of April 30, 1993, there were arrears in the total amount of $13,208.48 for four of the children.

On remittitur from this Court, the Supreme Court issued the order dated November 22, 1993, in which, after noting that it had "assumed jurisdiction" over the parties' respective Family

Court petitions, it recalculated the defendant's basic child support obligation by applying the statutory formula *(see,* Domestic Relations Law § 240 [1-b] [b] [3]) to combined parental income both below and above $80,000, and arrived at a basic child support figure of $1,615.26 per month. In determining to apply the statutory formula to combined parental income in excess of $80,000, the court considered "the factors set forth in Domestic Relations Law § 240 (1-g) (f), particularly the financial resources of the defendant and the children's previous standard of living". Without more, the boilerplate language used by the court is insufficient to satisfy the statutory requirement that the court set forth the basis for applying the child support percentage to parental income in excess of $80,000. "Given that the [Child Support Standards Act] explicitly vests discretion in the court and that the exercise of discretion is subject to review for abuse, some record articulation of the reasons for the court's choice to apply the percentage is necessary to facilitate that review * * * The stated basis for an exercise of discretion to apply the formula to income over $80,000 should, in sum and substance, reflect both that the court has carefully considered the parties' circumstances and that it has found no reason why there should be a departure from the prescribed percentage" *(Matter of Cassano v Cassano,* 85 NY2d 649, 655). This means that the court is obligated to set forth the "ultimate facts" which support its conclusions " 'in order to enlighten the parties and to make more effective the review of judgments on appeal' " *(Matter of Cassano v Cassano, supra,* at 655, quoting 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4213.07; *see also,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4213:2, at 336). Here, the court merely recited the standard it was applying, but failed to set forth the "ultimate facts", upon which the exercise of its discretion was based.

Moreover, this Court's remittitur order had directed the Supreme Court to determine whether an additional award for educational expenses is appropriate, after it had recomputed the defendant's basic child support obligation. In giving that directive, this Court noted that the basic child support obligation which the Supreme Court imposed upon the defendant consumed more than half of his take-home pay, and that it was clear that the defendant, upon payment of the basic child support awarded by the court, would not be financially able to pay educational expenses in the amount awarded *(see, Manno v Manno,* 196 AD2d, *supra,* at 492). On remittitur, the Supreme Court reduced the defendant's obligation for the children's college expenses to $1,000 per child per year. In reaching this

conclusion, the court stated that while it is true that the defendant's support obligation is more than one-half of his take-home pay, he does have other assets at his disposal and he has the ability to make some further contribution to his children's higher education, without liquidating assets which would result in undue tax consequences.

However, the record clearly shows that it would be impossible for the defendant to pay the amount imposed upon him for college expenses without liquidating part or all of his Individual Retirement Account, with resultant severe tax consequences. Indeed, the court directed that $75,000 should be taken out of the defendant's Individual Retirement Account for the purpose of making payments, which included college expenses. As the court noted, this would result in taxes and penalties of approximately $21,000.

We further find that the Supreme Court abused its discretion in abruptly terminating the hearing on the defendant's petition for downward modification of support. The court terminated the hearing on the grounds that the defendant persisted in his attempts to elicit testimony with respect to the plaintiff's current income and assets even though the court repeatedly told him that that issue was irrelevant, and that the court's "sixth sense" indicated to it that the defendant was a threat to the safety of the court, the plaintiff, and the plaintiff's attorney, as well as "a threat to the public safety of Rockland County".

Domestic Relations Law § 236 (B) (9) (b) provides that "[u]pon application by either party, the court may annul or modify any prior order or judgment as to maintenance or child support, upon a showing of the recipient's inability to be self-supporting or a substantial change in circumstance * * * including financial hardship". In making the determination whether there has been a substantial change in circumstance, the court must consider not only the alleged change in circumstance of the petitioning party, but also whether there has been a substantial change in the circumstance of the respondent (see, Sangimino v Sangimino, 176 AD2d 872; Kansky v Kansky, 150 AD2d 525; Goodell v Goodell, 77 AD2d 684; Klein v Klein, 47 AD2d 855). Consequently, the issue of the plaintiff's current income and assets was relevant, not only because the defendant sought downward modification of his support obligations on the grounds, inter alia, of the "[r]espondent's employment history/efforts" and that there are "less children now under age 21", but the defendant also sought to have the plaintiff pay for all or part of the cost of health insurance for the children.

Under the circumstances, whether or not there has been a substantial change in the circumstances of both parties was relevant (see, Sangimino v Sangimino, supra; see also, Matter of Derrick v Derrick, 162 AD2d 348). It was also an error to preclude the defendant from examining the plaintiff on the issue of emancipation of some of the children (see, Klein v Klein, supra).

Furthermore, there is nothing in the record to show that the defendant was a threat to the safety of anyone. The record shows that the defendant was consistently courteous and deferential to the court and to the plaintiff's attorney.

The Supreme Court also erred in awarding the plaintiff $4,625 as her one-half share of a 1967 Lincoln automobile. In the stipulation of settlement read into the record in open court by the plaintiff's attorney on June 6, 1990, the issue of the Lincoln automobile was ultimately settled as follows after a discussion off the record:

"In clarification again of the issue of the car; the Lincoln will belong to the husband. The husband will take full responsibility for paying the '84 federal taxes which were due in the two sums of $4400 and $1800, together with all interests, costs and disbursements that are due on that sum. In the event that the husband gets the taxes reduced in any way by the federal government, or obtains a refund from the Virgin Islands for the taxes that were paid, one-half of the refund, or one half of the reduction will be paid from Mr. Manno to Mrs. Manno. He will supply documentary proof of whatever the outcome was. Agreed?

"MR. MANNO: Agreed."

Thus, contrary to the plaintiff's contentions, the stipulation of settlement provided that the Lincoln would "belong to the husband". The plaintiff was, therefore, not entitled to a one-half share of the value of the automobile. Moreover, the plaintiff never requested any monies with regard to the automobile in her Family Court petition and it was error for the court to permit the plaintiff and her attorney to raise the issue during the hearing, while at the same time foreclosing the husband from establishing how much tax he paid pursuant to the stipulation.

We find that the defendant should have been given a credit for $5,164.25 which he paid to the plaintiff. The record clearly shows that the payment to the plaintiff of $5,164.25 was not for "medical insurance", since the defendant was totally responsible for the children's medical insurance and he maintained this insurance through a health plan offered by his employer. We note that at the hearing, the plaintiff acknowl-

edged that the defendant maintained the health insurance. Nor could the payment of the $5,164.25 have been made in 1990, since the record indicates that the defendant made that payment subsequent to the divorce judgment, which was rendered in February 1991.

The plaintiff was also not entitled to interest on arrears. Domestic Relations Law § 244 provides, in pertinent part, that a judgment "shall provide for the payment of interest on the amount of any arrears if the default was willful, in that the obligated spouse knowingly, consciously and voluntarily disregarded the obligation under a lawful court order". Thus, interest shall not be awarded where there is no finding of wilful default (see, Messina v Messina, 143 AD2d 735, 737; Friedman v Exel, 116 AD2d 433).

The defendant paid a pendente lite award of $1,650 per month up until the February 28, 1991, divorce judgment. Upon the entry of the judgment, the plaintiff served an income execution on the defendant's employer. The defendant moved in this Court by order to show cause to stay the enforcement of the judgment pending the hearing and determination of the prior appeal. On December 20, 1991, this Court granted the motion to the extent of staying enforcement of so much of the income execution as "require[d] the [defendant's] employer to withhold $500 per week until $10,611.85, for college tuitions, room and board, is paid". The stay was to be effective "pending hearing and determination of the appeal". After this Court decided the motion, the defendant continued to pay $1,776.25 per month in basic child support as directed by the divorce judgment. At the time of the hearing, he was due a credit of $2,892.46. Moreover, the Supreme Court noted that the defendant "did, in fact, pay over seventeen hundred dollars a month for many months, for a long time" and that "[i]f [he was] the type of guy to leave town or take off, [he] possibly wouldn't have paid that". The Supreme Court and the plaintiff's counsel further acknowledged that prior to the November 22, 1993, order, made upon remittitur, the defendant did not have to pay any money for college expenses for the children. Since there is no evidence of wilful default on the part of the defendant, it was error to award interest on the amount of arrears, which was only established after the November 22, 1993, order.

The court erred in sequestering the defendant's Individual Retirement Account until such time as $75,000 from that account is transferred to the plaintiff's attorneys, as receivers therefor. Domestic Relations Law § 243 permits sequestration of property where the obligated spouse fails to make any pay-

ment required by the terms of a matrimonial judgment or order. However, the remedy of sequestration is a drastic one and is invoked only when the record establishes that such remedy is necessary and appropriate *(see, Matter of Brennan v Brennan,* 109 AD2d 960), such as where the person obligated to make the payments repeatedly fails to pay and refuses to comply with court orders *(see, Beal v Beal,* 196 AD2d 471; *Rose v Rose,* 138 AD2d 475; *Farino v Farino,* 63 AD2d 691, *cert denied* 440 US 967). As noted above, the defendant paid child support from the time of the divorce judgment in February 1991 through March 1993, even though he lost his job in December 1992. He also maintained medical insurance for the children and continued to do so even in November 1993 when the court issued its sequestration order. The defendant did not pay educational expenses because, as the plaintiff's attorney put it at the hearing, "Mr. Manno's attorney went to the Appellate Division with an Order to Show Cause, and they gave him a stay on the payment of tuition until such time as they made a determination [on the appeal]". The defendant's obligation for payment of college expenses was not established until November 22, 1993, and the plaintiff's attorney stipulated that until that order was issued, the defendant did not know he had to pay $1,000 per child per year for college expenses. Consequently, it was an improvident exercise of discretion for the court to issue a sequestration order only a few days after the court had issued its order establishing the defendant's obligations for college expenses. Thompson, J. P., Friedmann, Krausman and Florio, JJ., concur.