■ GINA P., Respondent, v STEPHEN S., Appellant. [824 NYS2d 619]—

Order, Family Court, New York County (Rhoda Cohen, J.), entered on or about January 10, 2005, which denied respondent's objections to the Support Magistrate's order, unanimously modified, on the law, and the matter remanded for further proceedings not inconsistent with the foregoing, including a determination of: (1) a child support award consistent with Mr.

S.'s actual income and the child's needs; (2) a child care award commensurate with the number of hours that Ms. P. works; (3) a payment plan for retroactive child support and child care obligations considering all of Mr. S.'s sources of income, including his disposable assets, and otherwise affirmed, without costs.

Mr. S. is an attorney. Ms. P. provides public relations and marketing services for attorneys. The parties had a brief romantic relationship, but never married and never resided together. On October 15, 2001, Ms. P. gave birth to a daughter. Ms. P. filed a paternity petition, and Mr. S. was adjudged to be the child's father. This Court affirmed that determination (*Gina P. v Stephen S.*, 7 AD3d 333 [2004], *lv dismissed* 3 NY3d 702 [2004]). A court order, issued in August 2002, required Mr. S. to pay temporary child support of $1,133/month. He complied with that order. Also, before August 2002, Mr. S. voluntarily paid Gina P. $850/month to care for the child.

Ms. P. then brought this proceeding seeking that the child's father pay his pro rata share of (1) child support; (2) child care; and (3) unreimbursed medical expenses. Her motion also sought that Mr. S. pay 100% of the child's education expenses; that he be ordered to maintain a $1,000,000 life insurance policy for the child's benefit; and that he reimburse Ms. P. for reasonable nonmedical expenses incurred by her in connection with her pregnancy.

In the order appealed, the Family Court adopted the findings of a Support Magistrate, who concluded that the father's annual income was $400,000* and that the mother's was $100,000. The Magistrate set the father's monthly child support obligation at $3,706.67. It arrived at this figure by adding 17% of the first $80,000 of the parties' combined income to 10% of the remaining $420,000, and dividing by 80% the father's proportionate share. The court also required Mr. S. to pay $1,560 monthly for child care, and to maintain a life insurance policy for the child's benefit with a face value of $1,000,000. The court further adopted the Support Magistrate's determinations that Mr. S. should pay his proportionate share of the child's medical insurance costs and unreimbursed medical expenses. And, the court ordered the payments of retroactive support and child care to be paid in a lump sum.

The Support Magistrate made a number of errors in concluding that Mr. S.'s yearly income was $400,000. First, the Magistrate improperly added to Mr. S.'s income $14,750 reported on

---

* The court calculated Mr. S.'s income as follows: $346,352 from his work at his law firm, $14,750 from Cape Classics Inc. and $38,898 in interest from Treasury bills.

Mr. S.'s 2002 tax return. This sum was a repayment of a loan that Mr. S. made to Cape Classics Inc., a nonrecurring payment which should not have been considered in calculating his support obligations (*Skinner v Skinner*, 271 AD2d 679, 680 [2000] [nonrecurring payment should not have been considered in calculating ongoing support obligations]). In addition, certain Treasury bills reported on Mr. S.'s tax return belonged to Mrs. S. and the Magistrate should not have included the $38,898 in interest from them to Mr. S. (*Matter of Weber v Coffey*, 230 AD2d 865 [1996] [error to impute the income of a spouse, not a parent to the child, in determining support obligation]). Finally, the Support Magistrate should have considered both Mr. S.'s obligations to his wife, Mrs. S. (*see* Family Ct Act §§ 412, 413 [1] [f] [10]; *Matter of Clovsky v Henry J.*, 238 AD2d 670, 671-672 [1997], *lv dismissed* 91 NY2d 911 [1998] [spousal support is a factor to consider in determining child support obligation]; *Commissioner of Social Servs. v Ayala*, 177 AD2d 403, 405 [1991] [same]; *Matter of Steuben County Dept. of Social Servs. v James*, 171 AD2d 1023 [1991] [same]), and the tax consequences to Mr. S. (*see* Family Ct Act § 413 [1] [f] [4]; *see also Matter of Monahan v Hartka*, 17 AD3d 758, 759 [2005] [tax consequences are expressly set forth as a factor for consideration under section 413]), in its calculation of child support.

Additionally, the Support Magistrate failed to articulate, as required by the Child Support Standards Act (CSSA), why it deemed 10% of the combined parental income exceeding $80,000 to be an appropriate award (*Granade-Bastuck v Bastuck*, 249 AD2d 444, 446 [1998] [court erred in failing to make express findings of actual needs of child with respect to combined income exceeding $80,000]; *Manno v Manno*, 224 AD2d 395, 396-397 [1996] [same]). The CSSA contains a formula for the calculation of child support (Family Ct Act §§ 513, 413). It requires that 17% of the first $80,000 in combined parental income be awarded when there is one child (Family Ct Act § 413 [1] [b] [3] [i]). As to the combined parental income exceeding $80,000 the court has discretion. It may award an amount equal to the statutory percentage (here 17%), or determine an appropriate award based upon the factors set out in Family Court Act § 413 (1) (f) (Family Ct Act § 413 [1] [c] [3]). If the court determines not to apply the statutory percentage to the parties' income exceeding $80,000, then it is required to articulate the basis for its deviation. In cases such as this one, where a combined parental income is well in excess of $80,000, it is proper to consider and base the award upon the child's " 'actual reasonable needs' " (*Anonymous v Anonymous*, 222 AD2d 305, 306 [1995], quoting *Harmon v Harmon*, 173 AD2d 98, 111 [1992]).

While the Magistrate stated that she had taken the child's needs into consideration when setting the parents' support obligation at 10% of $320,000, she failed to lay out the basis of this conclusion (*Granade-Bastuck, supra*). Further, a review of the record shows that based upon the payments which were documented (including those for the child's classes, clothes, books, toys, home entertainment, laundry, furniture, and expenses for birthday parties), the award of $3,706.67 a month was much too high. Upon remand, the court should carefully evaluate the needs of the child and specifically articulate the basis for its support determination.

Also inappropriate was the child care award of $425/week for a 45-hour week, given Ms. P's testimony that she works 25 to 30 hours per week out of her apartment. Family Court Act § 413 (1) (c) (4) provides for the noncustodial parent to pay his or her proportionate share of the child care expenses incurred by the custodial parent's work schedule. Thus, Mr. S. should be responsible for his share of child care for the time that Ms. P. is working.

Upon remand, the court must also recalculate the amount owed by Mr. S. in retroactive child support and child care. It should also devise a reasonable installment schedule for payment considering Mr. S.'s income and assets. Although he proposes to pay $200 monthly toward settling his outstanding debt, Mr. S. can clearly afford more substantial installments.

The Support Magistrate, when directing that Mr. S. obtain a $1,000,000 life insurance policy in favor of his daughter, relied upon Family Court Act § 416 (b) without further exposition. Article 4 of the Family Court Act governs child support for the issue of married couples, while article 5 governs support for children born out of wedlock. Family Court Act § 513 refers to section 413, but it does not reference Family Court Act § 416 (b), which allows the court to order the noncustodial parent to obtain life insurance for the benefit of the child.

On appeal, the question of the constitutionality of the apparent disparity between children born in and out of wedlock is raised in defense of the Support Magistrate's ruling. However, when a challenge to the constitutionality of a state statute is involved, there must be proof of service on, or notice to the Attorney General pursuant to CPLR 1012 (b) (1). That section provides: "When the constitutionality of a statute of the state . . . is involved in an action to which the state is not a party, the attorney-general, shall be notified and permitted to intervene in support of its constitutionality." The appellate record does not contain any indication that the Attorney General

was notified of a challenge to the constitutionality of Family Court Act § 513 at any stage of this litigation. Accordingly, the issue is not properly before us (CPLR 1012 [b] [3]; *Matter of Weinberg v Omar E.*, 106 AD2d 448 [1984]). Concur—Mazzarelli, J.P., Saxe, Nardelli, Sweeny and McGuire, JJ.

