McGuire, J.
(dissenting in part). Petitioner mother commenced a proceeding in Family Court against respondent father for child support for the parties’ child several months after the child’s birth. The parties are both successful professionals—the father is a physician and the mother an executive at a large corporation. On July 22, 2003, a temporary order of support was issued that required the father to pay $1,945 in monthly child support beginning August 1, 2003. On April 29, 2004, temporary child support was increased to $3,000 per month, effective May 1, 2004.
In October 2004, a hearing was held before a Support Magistrate to determine the amount of child support. By an order dated December 17, 2004, the Support Magistrate directed the father to pay $4,044 per month in basic child support;[1] the order also required the father to pay $123,213.94 in retroactive support. The Support Magistrate rejected the father’s claim that the mother had failed to demonstrate the actual needs of the child and rejected the father’s argument that the parties’ combined income should be capped for the purpose of determining the basic award. Thus, the Support Magistrate based the basic award on 17% of the parties’ total combined income of $375,619.21. By an order entered March 4, 2005, Family Court overruled the father’s objections to the Support Magistrate’s order.
On the father’s appeal from Family Court’s order, we reversed the order, vacated the support award and remanded the matter for further proceedings, including a further hearing, if necessary, to determine the father’s past and prospective child support obligations (28 AD3d 251 [2006]). We determined, in pertinent part, that “[t]he Magistrate erred ... in applying the 17% statutory rate to the entire portion of the parties’ combined income in excess of $80,000 without considering the actual needs of the subject two-year-old child. While the Magistrate stated, in conclusory fashion, that the award conformed with the child’s needs, in reality he appears to have merely allocated 50% of the mother’s expenses to the child without any analysis of whether *458 that approach was appropriate. In high income cases, the appropriate determination under Family Ct Act § 413 (1) (f) for an award of child support on parental income in excess of $80,000 should be based on the child’s actual needs and the amount that is required for the child to live an appropriate lifestyle, rather than the wealth of one or both parties . . . Accordingly, on remand, Family Court should consider the appropriate level of child support in light of the child’s actual needs. As part of its analysis, the court should consider whether a cap on combined income subject to child support is warranted” (id. at 252 [citations, brackets and internal quotation marks omitted]).
By an oral order issued on June 21, 2006, the Support Magistrate issued an interim order of support that required the father to pay $2,600 per month. In a subsequent order, dated December 4, 2006, the Support Magistrate, after questioning the correctness of our order remanding the matter to Family Court, concluded that the father had failed at the initial hearing to present evidence relevant to the child’s actual needs, refused to conduct another hearing on the issue and, in effect, adhered to his original December 17, 2004 decision, i.e., basic support of $4,044 per month. By an order dated February 2, 2007, Family Court essentially directed the Support Magistrate to comply with our order. Thus, Family Court remanded the matter to the Support Magistrate to make specific findings of fact regarding the actual needs of the child and to analyze whether a cap should be applied to the parties’ combined income over $80,000. On June 27, 2007, the Support Magistrate held a hearing on the actual needs of the child. The mother, who was the only witness who gave testimony at that hearing, attempted to establish the actual needs of the child. The relevant portions of that testimony are set forth below.
On September 14, 2007, the Support Magistrate issued his decision regarding both the actual needs of the child and the father’s child support obligations. The Support Magistrate concluded, among other things, that 50% of the amount of rent, automobile expenses (i.e., lease, insurance, fuel, maintenance) and utilities were attributable to the child. The Support Magistrate also credited the mother’s claims regarding the amounts she spent monthly on the child for toys, clothing and “entertainment.” Based on these and other conclusions, the Support Magistrate set the father’s basic monthly child support at $3,053.67. In doing so, the Support Magistrate effectively capped the percentage of the combined parental income that was subject to child support below the statutory 17% benchmark. By an order dated November 30, 2007, Family Court overruled the parties’ *459 challenges to the Support Magistrate’s September 14 decision. The father appeals from this order; the mother cross-appeals from that same order as well as the earlier, February 2, 2007 order that had remanded the matter to the Support Magistrate for specific findings of fact regarding the actual needs of the child and an analysis as to whether a cap should be applied to the parties’ combined income over $80,000.
Family Court Act § 413 provides a three-step method for computing child support where the combined income of the child’s parents is greater than $80,000 (see Matter of Cassano v Cassano, 85 NY2d 649 [1995]). Under the first step, the court must calculate the parents’ combined income (id. at 653); under the second, the court must multiply the parents’ combined income, up to $80,000, by a specified percentage based on the number of children—17% for one child—and then allocate that amount between the parents according to their share of the total income (id., citing Family Ct Act § 413 [1] [b] [3]; [c]); under the third, “ ‘the court shall determine the amount of child support for the amount of the combined parental income in excess of [$80,000] through consideration of the factors set forth in paragraph (f) of this subdivision and/or the child support percentage’ ” (id., quoting Family Ct Act § 413 [1] [c] [3]). Paragraph (f) provides a nonexhaustive list of factors the court is to consider, including “[t]he financial resources of the custodial and non-custodial parent, and those of the child”; “[t]he non-monetary contributions that the parents will make toward the care and well-being of the child”; “[a] determination that the gross income of one parent is substantially less than the other parent’s gross income”; as well as “[a]ny other factors the court determines are relevant in each case.” (Family Ct Act § 413 [1] [f] [1], [5], [7], [10].) One of those “other factors” that a court should consider where the parents’ combined income exceeds $80,000 is the actual needs of the child (see Matter of Michele M. v Thomas F., 42 AD3d 882, 884 [2007]; Irene v Irene, 41 AD3d 1179, 1181 [2007]; Matter of Brim v Combs, 25 AD3d 691 [2006], lv denied 6 NY3d 713 [2006]; Anonymous v Anonymous, 286 AD2d 585 [2001], lv denied 97 NY2d 611 [2002]). Thus, we reversed Family Court’s March 4, 2005 order overruling the father’s objections to the December 17, 2004 decision of the Support Magistrate, which set the father’s support obligations without considering the actual needs of the child, and remanded the matter to Family Court to consider the actual needs of the child before determining the father’s support obligations (28 AD3d 251 [2006], supra). The burden of establishing the actual needs of the child rested with the mother (see Matter of Sachs v Sachs, 31 AD2d 918 [1969]; Matter of *460 Kennedy v De Los Reyes, 26 AD2d 815 [1966]; Matter of Barry v Barry, 32 AD2d 540 [1969]), a point she essentially acknowledged in her brief.
Following the actual needs hearing, the Support Magistrate found that the mother spent certain amounts monthly on items that benefitted both her and the child. Specifically, the Support Magistrate determined that the mother spent $2,320 per month on rent; $481.14 per month on utilities, i.e., gas, cable television and Internet service, and cell phone and land-line telephone service; and $817.48 per month on car expenses. The Support Magistrate apportioned 50% of each of these items to the child. As discussed below, we should not uphold these allocations.
With respect to rent, the mother testified that she had an apartment in Hoboken before she gave birth to the child and moved with the child to another Hoboken apartment when the child was IV2 years old, but she adduced no evidence regarding the amount of rent she paid for her prior apartment. Concerning the car, the mother testified that she leased it in September 2003, approximately 11 months after the child was born, used it to commute from Hoboken to her office, which is in either Seacaucus, New Jersey or Manhattan, and would drop the child off at school on her way to work, but she provided no evidence bearing on how she got to work, or whether she had owned or leased a car, before September 2003. Other than stating that she used the car to drive the child to medical appointments on an undisclosed number of occasions and that she occasionally drove the child to recreational venues such as parks and the zoo, the mother offered no evidence regarding the extent to which the car was used for the benefit of the child. Indeed, the mother acknowledged that she could not determine the extent to which she used the car for the benefit of the child as opposed to herself.
Concerning the utilities, the mother testified that she paid monthly bills for gas ($175.55), cable television, Internet and land-line telephone services ($135.39), and cell phone service ($160.20). Again, there was no evidence from the mother regarding the extent of her expenditures for these services before the child was born. The only evidence adduced with respect to the child’s use of these services was that he had an air conditioner in his room as well as a humidifier and air purifier; he had “use” of the television; the mother would use the telephones to make appointments for him; and the mother provided cell phones to her mother and the babysitter so that the mother could reach them when they were with the child.
The mother also claimed that she spent approximately $300 per month on “entertainment” for the child, e.g., trips to the *461 zoo, museums, the circus and vacations, but submitted no records, documenting this claim (see Gina P. v Stephen S., 33 AD3d 412, 415 [2006]). The sole support she offered for it was her own conclusory testimony about a 2006 trip to Ocean City, New Jersey, a couple of trips to a zoo, a trip to a museum and a trip to the circus.
Notably, too, the mother acknowledged during her deposition on the issue of the child’s actual needs, which was taken one month before the actual needs hearing, that with the exception of child care, education, medical insurance and unreimbursed medical expenses (all mandatory add-on expenses that are not disputed on appeal), she did not know how much money per month she spent to cover the child’s actual needs.
We cannot, consistently with our prior decision, affirm the allocation to the child of 50% of the monthly payments made by the mother for rent, automobile expenses and utilities. The same errors were committed following our remand, as the Support Magistrate again “merely allocated 50% of the mother’s expenses to the child without any analysis of whether that approach was appropriate” (28 AD3d at 252), and the support award is to that extent inconsistent with our direction that it be “based on the child’s actual needs” (id.). Moreover, the mother failed to introduce any evidence regarding a clearly relevant subject, her expenditures for rent, transportation and utilities prior to the birth of the child. If, for example, the prior apartment was comparable and she paid essentially the same rent, the allocation to the child of 50% of the monthly rent would represent a windfall for the mother. In addition, as is undisputed, the burden of establishing the child’s actual needs rested with the mother (Matter of Sachs v Sachs, 31 AD2d 918 [1969], supra). By upholding the allocation of 50% of these expenditures to the child, the majority effectively requires the father to bear all the economic burdens of the mother’s failure to meet her evidentiary burden.
Although I cannot agree with the majority’s decision to affirm these allocations, I would not direct yet another remand as that would entail more expense on the issue of child support and more delay in the final determination of this issue. I would allocate to the child one third of the expense for the apartment, the car and the utilities, in part because the child unquestionably benefitted from these expenditures and in part because the mother’s failure to meet her burden with regard to these expenditures should not be without any consequences to her. *462 For essentially the same reasons, I would reduce to $150 the monthly allowance for entertainment.[2]
Of course, the mother was not required to establish with anything like mathematical precision the extent to which the child used or benefitted from the apartment, the vehicle and the utilities. Especially given the terms of our prior order, however, the mother was required to adduce some evidence bearing on the expenses she incurred on these items before the child was born. Simply allocating half of the expenses to the child that the mother incurred for rent, the vehicle and the utilities is inconsistent with our prior order and its implicit rationale—that an award of basic child support in a “high income case” such as this one should be premised on reasoned allocations of expenses between the child and the custodial parent.
Justice Saxe is of the view that I “seek[ ] to impose an untenable burden” on the mother. But all I would hold is that because she bore the burden of proof on the issue and because of the terms of our prior order, the mother should have come forward with evidence relating to her expenditures for rent, transportation and utilities prior to the child’s birth. Justice Saxe is correct that allocating one third of these expenditures to the child “finds no particular support in the record.” The allocation he upholds, however, suffers from the same infirmity. More importantly, for the reasons stated above, the mother’s failure to come forward with relevant evidence should not be inconsequential. Justice Saxe’s defense of the allocation of one half of these expenditures to the child is unpersuasive. The apparent standard—whether an expenditure carries with it a “direct or indirect benefit” to the child or is “in the interests of the child”—is stated at such a high level of generality that it could be used to defend allocating all of the expenditures to the child. Because it could defend anything, it defends nothing. This sweeping reasoning, moreover, is at odds with our prior decision. Its acceptance, after all, would render pointless our order directing a remand.
Concerning the monthly award for entertainment, Justice Saxe states that my reduction of that award from $300 to $150 “is only explained by [my] suggestion that petitioner failed to provide sufficient proof of each one of the child’s activities. However, these are the types of activities for which parents *463 often pay in cash and don’t usually keep receipts. The Support Magistrate appropriately awarded an amount commensurate with the lifestyles of two affluent New York-area professionals, in line with the types of ordinary activities to which petitioner testified, which will only increase with the child’s age. The cost of one yearly vacation with the child, a yearly birthday party for the child with his classmates, plus typical weekend attendance at such venues as movie theaters, roller rinks, zoos, circuses, museums, and video arcades, with adult supervision, would alone approximate the Support Magistrate’s calculation of the entertainment expense for this child.” In the second sentence, Justice Saxe simply speculates, with no record support, why the mother was unable to provide receipts for entertainment-related activities. The mother certainly provided no testimony supporting that supposition. If the mother gave testimony supporting the assertion in the third sentence, I might think it appropriate to uphold the entertainment awards. But the only testimony the mother provided on this subject was that she and the child took a trip in 2006 to Ocean City, New Jersey, and that the child had been to a zoo and the circus.
Accordingly, I would modify the November 30, 2007 order to the extent of reducing the father’s basic child support obligations as indicated above. I would also make clear that our disposition of this appeal should be without prejudice to a motion by the father for a reduction in his support obligations based on a change of circumstances—the marriage of the mother to another man, which occurred less than three weeks before the actual needs hearing (see Szablak v Keida, 155 AD2d 887 [1989]; cf. Moffre v Moffre, 29 AD3d 1149, 1151 [2006], citing Matter of Carr v Carr, 309 AD2d 1001, 1004 [2003]).

. The father was also directed to pay $1,732.75 per month in mandatory add-ons. The father’s total monthly child support payment under the December 17, 2004 order of the Support Magistrate was $5,776.75.

. I agree with the majority’s reductions of the allowances for clothing and toys. I also agree with the majority that Family Court correctly remanded the matter to the Support Magistrate for a hearing on the actual needs of the child. I would not disturb the allocations made by the Support Magistrate for food, cleaning, laundry, haircuts and photographs.