J.P. v S.M. (2025 NY Slip Op 50793(U))

[*1]

J.P. v S.M.

2025 NY Slip Op 50793(U)

Decided on May 14, 2025

Supreme Court, Kings County

Sunshine, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 14, 2025
Supreme Court, Kings County

J.P., Plaintiff,

against
S.M., Defendant.

Index No. REDACTED

Daniel Nottes, Esq.
Attorney for Plaintiff
150 East 58th Street
New York, New York 10155
Wayne Nolan Alleyne, Esq.
Attorney for the Children
30 Wall Street, Floor 8
New York, New York 10005
Offit Kurman
By: Fara K. Rodriguez, Esq.
Attorney for Defendant
590 Madison Avenue, 6th Floor 
New York, New York 10022
Yoram Nachimovsky, Esq.
Co-Counsel for Defendant
225 Broadway, Suite 2018
New York, New York 10007

Jeffrey S. Sunshine, J.

This Court is called upon to determine whether to grant the mother pendente lite maintenance and to grant the father child support where the parties' three (3) children live with the father in the two (2) residences while the mother asserts that she is forced to sleep in her "office" and to travel out of New York State to stay with her parents where the father asserts that he earns only nominal income from his clothing store on Kings Highway in Brooklyn yet has paid nearly $1.5 million ($1,500,000.00) in counsel fees and concedes that his annual living expenses exceed $680,000.00. The father concedes that the mother was not employed from the date of marriage in 2008 until late 2020 when she started earning income from a pandemic-based PPE supply import opportunity which she contends is no longer a viable business opportunity due to there no longer being pandemic-era demand for PPE.
There is an extensive procedural history of this case prior to it being assigned to this justice after numerous recusals. That history is detailed in the written order dated January 10, 2025 [NYSCEF #543]. At the time this case was assigned to this Court, there were multiple open motions pending, including the mother's pendente lite application and the father's cross-motion seeking pendente lite support. Given the procedural history of this case these applications remained open.
The Court scheduled a status conference to review each open motion to determine what, if any, relief sought in those motions was moot and/or remained open for judicial determination to move this matter expeditiously toward resolution or trial. The Court spent many hours over several days attempting to find a date and time when all counsel, including the attorney for the children, were available for a status conference. After a date could not be agreed on, the Court, by written order dated January 24, 2025, directed counsel to appear for a status conference. In doing so, this Court noted that the issues of custody, parenting time and an order of protection were pending [NYSCEF #549].
The status conference on the twelve (12) open motions took place on January 30, 2025. During that status conference, the Court determined that the mother's pendente lite application, filed in September 2023, and the father's cross-motion for pendente lite support, filed in December 2023, required oral argument. 
Given the amount of time that had passed since these applications had been filed, the Court directed updated Statements of Net Worth be provided and that the parties provide their most recent tax returns. The Court scheduled oral argument on the pendente lite applications for February 25, 2025.[FN1]

[*2]The Mother's Pendente Lite Application
Defendant filed an emergency order to show cause dated September 18, 2023 [mot. seq. #2; NYSCEF #81] seeking an order for the following:
A.) Vacating and/or Dismissing the July 31, 2023 Temporary Order of Protection ("TPO") Plaintiff obtained against Defendant for him and the children or in the alternative Modifying and/or Dismissing the TPO to no longer include the parties' Children;
B.) Defendant temporary sole custody of the three minor Children
C.) Limited parenting time for Plaintiff with no overnights;
D.) Defendant immediate access and exclusive occupancy of the marital residence located in Brooklyn; and if not granted immediate access and exclusive occupancy, then immediate access to the marital residence to retrieve Defendant's jewelry and personal belongings and the sum of $200,000 from Plaintiff, without prejudice, to obtain a temporary rental apartment near the parties' children's school and friends, with four bedrooms and sufficient funds to be able to furnish said apartment;
E.) Directing Plaintiff to make the direct payment of the expenses underlined and set forth in Defendant's Affidavit and pay her unallocated pendente lite support in the sum of $33,980 per month;
F.) Reunification therapy between the party's son and Defendant, to be paid by Plaintiff;
G.) Appointment of a forensic psychological evaluator to render a. forensic report to the Court, to be paid by Plaintiff;
H.) Temporary Restraining Order prohibiting Plaintiff's father, [REDACTED], from any contact with the parties' children;
I) Removal of Plaintiff's current nanny, "Christina;"
Plaintiff to pay Defendant an award of interim counsel and expert fees in the sum of $125,000.00, with leave to apply for additional such fees; and
K.) for such other and further relief this Court deems just and proper.
On the record on January 30, 2025, defendant-wife's counsel represented that all the relief requested remained open except for "G" [Appointment of a forensic psychological evaluator to render a. forensic report to the Court, to be paid by Plaintiff] because a forensic had been appointed and a forensic report had been issued and "I" [Removal of Plaintiff's current nanny, "Christina;] which plaintiff-counsel represented on the record was "moot" [Tr. 1/30/25, p. 9]. The Court denied "H" on the record noting that the Supreme Court was not going to handle orders of protection against grandparents and that the issue could be addressed in Family Court, if appropriate.
Defendant filed a Notice of Motion dated December 1, 2023 [NYSCEF #142] seeking the following relief:
a. Denying and dismissing Defendant's Order to Show Cause filed on September 15, [*3]2023 in its entirety, including, without limitation, pursuant to 22 NYCRR 202.16(k)(2) and 22 NYCRR 202.8b; and
b. Drawing an adverse inference against Defendant for her refusal to provide her 2022 income information, and therefore imputing income of no less than $250,000 to Defendant; and
c. Awarding the Plaintiff pendente lite child support of no less than $5,109.94, retroactive to July 25, 2023; and
d. Awarding the Plaintiff pendente lite maintenance of no less than $3,212.85 per month, retroactive to July 25, 2023; and
e. Directing the Defendant to pay her pro rata share no less than 71.5% of add-on expenses, including childcare expenses, health insurance premium, unreimbursed medical expenses (including therapy expenses), extracurricular and summer camp expenses, and educational expenses (including tutoring expenses), retroactive to July 25, 2023; or, alternatively
f. Drawing an adverse inference against Defendant for her refusal to provide her 2022 income information, and therefore awarding Plaintiff pendente lite child support and maintenance based on the children's and his needs as set forth in his recitation of expenses as stated in his Net Worth Statement annexed hereto; and
g. Directing the Defendant to submit her 2022 income tax return and supporting forms and schedules;
h. Granting Plaintiff leave to amend and/or supplement his filing upon receipt of the 2022 income tax return and supporting forms and schedules of the Defendant;
i. Compelling Defendant to provide the address where she resides to the Plaintiff and the Court, pursuant to, without limitation, CPLR 3118; and
j. Granting such other and further relief as to the Court may deem just and proper.
The Facts
The parties were married in September 2008. The plaintiff-father is forty-seven (47) years old. The defendant-mother is thirty-eight (38) years old. There are three (3) children of the marriage: a son, J., age 15 years old; a daughter, A., age 12 years old; and a daughter, P., age 3 years old. The mother had always resided with her parents prior to marrying the plaintiff in 2008 when she was twenty-one (21) years old and from 2008 to August 2020 she was a homemaker [February 28, 2025 transcript, p. 39]. The father owns a clothing store on Kings Highway in Brooklyn, New York. There does not appear to be any representation as to either parties' education level at this time.
The father commenced this action for divorce against the mother on July 25, 2023 [NYSCEF #1]. On July 26, 2023, counsel for the father filed an ex parte emergency order to show cause seeking, inter alia, an order of protection against the mother [NYSCEF #4]. That application was heard on July 27, 2023, ex parte by the first assigned justice who granted the father an ex parte stay away temporary order of protection in favor of him and the parties' children against the mother [NYCEF #23]. In support of his application for the order of protection, the father alleged that the mother has an alcohol and substance abuse problem and is a danger to the children.
The father was granted an ex parte exclusive use and occupancy of the parties' two (2) residences — both the marital residence in Brooklyn and the summer home in Upstate New York [*4]— pending a hearing and ordered that the mother was prohibited from traveling and/or driving with the children [NYSCEF #22]. The order to show cause was made returnable for July 31, 2023.
On the same day that the father obtained the ex parte temporary order of protection against the mother, the mother obtained a criminal stay away order of protection against the paternal grandfather because of an alleged assault that took place on July 25, 2023, during which it was alleged that he punched the mother in the face [NYSCEF #93]. The mother claims that her father-in-law is, in effect, "bank rolling" this divorce action by providing unlimited financial support to the plaintiff-father because of his animosity towards her and because he is angry that he was arrested after punching her in the face.
The mother maintains that this divorce action and the plaintiff's father's interference with her seeing the children is a result of "my Husband's family vendetta against me" because after years of physical, emotional and financial domestic violence by the plaintiff-father she started asserting some independence [NYSCEF #43, p. 2]. She does not deny that she was involved in a car accident immediately prior to the divorce action but claims that the father and a personal investigator he hired "framed" her by planting certain items in her automobile after the accident. She concedes that she consumed alcohol and legal recreational substances prior to commencement but vehemently denies having an alcohol and/or any other substance abuse problem. In support, she annexes documentation of consistent Soberlink alcohol testing and hair and urine drug testing showing negative results since the commencement of this action. She also avers that she had routine monthly blood draws by IVF specialists for years when trying to get pregnant with the parties' youngest child and that during that pregnancy she had bi-weekly blood draws because it was considered a "high risk pregnancy" and that there was no evidence of any substance abuse in those blood records [NYSCEF #43, p. 10].
On July 28, 2023, the day after the ex parte appearance on the father' application for an order of protection, the mother's first counsel filed a notice of appearance [NYSCEF #24].
At the hearing date of July 31, 2023, the Court appointed Wayne N. Alleyne, Esq. as the attorney for the children [NYSCEF #29]. Thereafter, on August 4, 2023, the Court issued an order of drug screening for both parties [NYSCEF #31] and an "Order for Observed and Evaluated Visits" between the mother and the children [NYSCEF #33]. It appears that those visits either never started or at least did not continue.
The Mother's Legal Representation
The mother was represented by numerous attorneys in quick succession at the beginning of this litigation. On September 1, 2023, Yoram Nachimovsky, Esq. filed a Notice of Appearance for the mother [NYSCEF #39]; however, on September 14, 2023, a prior attorney filed a proposed order for supervised parenting time [NYSCEF #40]. The next day, September 15, 2023, Mr. Nachimovsky filed motion sequence #2, the mother's pendente lite application [NYSCEF #41-78]. On November 22, 2023, the mother filed a consent to change attorney substituting Fara Rodriguez, Esq. for a prior attorney [NYSCEF #139]. Mr. Nachimovsky, Esq. continues to represent the mother. From November 2023 until April 2025, the mother was represented by both Mr. Nachimovsky and Ms. Rodriguez; however, in April 2025, Ms. Rodriguez, Esq. was relieved as counsel for the mother as detailed herein below. 
When Ms. Rodriguez sought to be relieved, Mr. Nachimovsky, her co-counsel, opposed the application asserting that he was not a matrimonial attorney and was not competent to represent the mother at a hearing or trial. The Court notes that from the first appearance before [*5]this Justice, the Court was willing to conduct an immediate trial on the issue of the order of protection and the issues of custody and parenting time.
On April 28, 2025, Mr. Robert M. Wallack, Esq. filed a notice of appearance [NYCSEF #617].
Supervised Parenting Time Between the Mother and the Children
The parties entered into a stipulation for the mother to have supervised parenting time with the three (3) children utilizing Comprehensive Family Services (CFS) dated September 19, 2023, which was so-ordered by a prior justice [NYSCEF #82], and the matter was adjourned to October 23, 2023. It appears not in dispute that those supervised visits did not take place. The mother contends that the father is engaged in an attempt "to brainwash our children and erase me from their lives" [NYSCEF #43, p. 10]. She contends that the "Plaintiff is so fixated on his strategy to destroy me both emotionally and financially that he has completely lost sight of the ramifications of his actions on our children" [NYSCEF #43, p. 19]. She contends that the father has done anything he can do to not facilitate the children seeing her including not providing required financial information to CFS so that supervised visits could be scheduled and not bringing the children to schedule times [NYSCEF #87]. When this Court attempted to schedule a conference between counsel, the father' counsel submitted an affirmation of actual engagement [NYCEF #84]. 
Mother's Request to Vacate the Order of Protection
The mother asserts that the father obtained the ex parte order of protection using "lies" and "fraudulent misrepresentations" and that she was not provided an opportunity to present the facts supporting her case [NYSCEF #43, p. 3, p. 4]. The mother avers that she has taken "proactive measures, including Soberlink and monthly drug testing" to prove that the father's claims against her are unfounded [NYSCEF #226, p. 2]. The mother has produced records showing that she completed more than 1,640 Soberlink tests between October 2023 and January 2025 [FN2]
and provided lab results from hair and urine drug screening all negative except for an initial hair analysis test dated August 2023 showing positive for THC from a 1.5" hair sample [NYSCEF #550].
The father contends that, despite the mother's testing protocol, that the mother "continues to present a clear and present danger to the children and me" whom he characterizes as engaging in "dangerous and unhinged behavior" [NYSCEF #143, p. 2]. These allegations appear to be based on a series of alleged incidents in the weeks immediately prior to the father commencing the divorce action. 
Parenting Time Between the Mother and The Parties' Oldest Two Children
When this case was assigned to this Court in January 2025, the mother represented that she had not seen the parties' two (2) oldest children in more than five hundred (500) days. She contends that the father "has no compunction about indoctrinating our children with his lies to alienate them from me" which, she contends, included posting the temporary order of protection he obtained against her to the front door of the marital residence where the children could see it [*6][NYSCEF #43, p. 11]. The father did not deny this allegation. The mother contends that the father can litigate endlessly "to preclude her from having anything" in the form of financial relief or access to the parties' children because, she contends, the father has the benefit of a superior financial position in the litigation and is willing to spend any sum of money necessary to financially "starve" her out of the litigation. 
The father asserts that the "wedge" between the mother and the children was solely the result of the children observing the mother's behavior during the marriage and not a result of his actions [NYSCEF #143, p. 4]. He asserts no position as to how the total lack of access between the children and the mother — not even supervised parenting time — over the last nearly (2) years may have contributed to this position.
The attorney for the children represents that currently the two older children are resistant to seeing the mother.
In Camera Interview
A prior assigned justice to this matter conducted an in camera interview with the parties children on May 2, 2024. The transcript of that in camera was provided to this Court when the matter was reassigned and has been reviewed by this Court [see CPLR 4019]. The in camera transcript is maintained under seal. 
Supervised Therapeutic Parenting Time
Upon this case being assigned to this Court, efforts were immediately made to find a provider for supervised therapeutic parenting time between the mother and the children given that the prior orders were not being followed and that after so much passage of time the children were resistant to parenting time with the mother; however, due to numerous factors, which counsel for the parties elaborated on the record during the initial status conference before this Court, there were challenges to finding a provider. In fact, for more than a year the parties were unable to find any provider on the approved Second Department list of mental health providers to do supervised therapeutic visits and the Court ultimately had to appoint a provider outside the approved list that the parties consented to [appointment order dated April 10, 2025, NYSCEF #609]. Numerous providers had been determined ineligible because of complaints or conflicts of interest.
In that order, the Court detailed the role of the therapeutic professional and outlined the time required for the mental health professional to meet with each of the parties and with the children before proposing a plan for therapeutic parenting time between the mother and the children. 
Based on this appointment, the Court finds that relief requested "F" in the mother's order to show cause is now moot.
Supervised Parenting Time Between the Mother and the Parties' Youngest Child
Counsel for the parties represent that the parties entered into an informal agreement when the case was pending before a prior Justice, without the involvement of the Court, for the mother to have supervised parenting time with the parties' youngest child, P. who is three (3) years old. The parties have not involved this Court in this "agreement" and when asked for a copy of this alleged agreement, counsel for the father acknowledged by e-mail dated April 17, 2025 that there is no written agreement in NYSCEF related to this arrangement. At this time, neither party has provided a proposed interim stipulation related to this access. There appears to be a level of contention regarding this supervised visitation.
[*7]Custody and Parenting Time
The parties' cross-applications for pendente lite support largely focus on their cross allegations of bad behavior by the other: the mother contends that the father has been physically and emotionally abusive towards her throughout the marriage and that his physical abuse escalated after her pandemic-based business had some financial success and that he and his father are, in effect, punishing her for gaining some independence and financial autonomy [NYSCEF #43, p. 15]. The mother avers in graphic detail that the father punched her, kicked her, pushed her down and other physical acts of violence in addition to alleging that he berated her for her weight and physical appearance and demeaned her intelligence and abilities. 
The father asserts that the mother's allegations are unfounded and that she offered no "corroborating evidence" in support of her allegations [NYSCEF #143, p. 2] and that any injuries she suffered during the marriage were a result of her abusing drugs and alcohol not a result of any actions by him [NYSCEF #143, p. 3]. 
The parties' allegations of domestic violence, substance abuse and assessments of judgment related to the children are all related to the parties' applications for the order of protection, custody and parenting time: these issues are ripe for trial (see SL v JR, 27 NY3d 558 [2016]). Dr. Rodrigo A. Pizarro was appointed as the forensic evaluator by written order dated November 3, 2023 [NYSCEF #137]. A forensic evaluation was conducted and a written forensic report was issued prior to this case being assigned to this Justice. By order dated March 27, 2025 [NYSCEF #596], the Court adjourned the matter for the mother to seek counsel who could try the case and to file an application for pendente lite counsel fees.
The Court need not detail or address the parties remaining cross allegations related to custody and parenting time here because the issues of custody and parenting time are ripe for adjudication and those issues will be scheduled for a pre-trial conference as detailed herein-below.
As such, the Court finds that the relief requested in the mother's order to show cause "A", "B", "C", and "D" are referred to the trial court.
Remaining Relief
The father resides in the marital residence with the children after the mother was excluded and continues to enjoy access to the second home. The relief related to the father continuing to maintain the carrying expenses of the homes is granted. The mother's application to return to the marital residence and for interim custody of the children shall be determined in the trial that the Court is ready to commence forthwith which will resolve the issues of custody and parenting time and the order of protection (see SL v JR, 27 NY3d 558 [2016]).
The relief that is currently before the Court are the parties' cross-applications for pendente lite maintenance and child support which requires the Court to assess the parties' respective claims as to their incomes and access to financial resources which are vastly divergent.
The Father's Income
The father contends he, not the mother, was "the children's primary parent" [NYSCEF #143, p. 1] and that he, not the mother, should receive pendente lite child support and maintenance because, he avers, he earns minimal income from owning a small "struggling" retail clothing store on Kings Highway in Brooklyn and that this has been his only source of income for many years [NYSCEF #143, p. 15]. He asserts that the family, in effect, financially survived during the marriage despite his lack of income because his father helped "pay for some of the [*8]children's and our family's expenses" during the marriage but that there "is no promise or indication that [my father] will continue" to provide financial support for him and the children in the future [NYSCEF #143, p. 16].
The father asserts that "given all [sic] evidence indicating that [the mother] is misrepresenting her income" the Court "should draw an adverse inference against" her and calculate support above the cap based on her earning capacity of $250,000 annually and him earning $45,783 [NYSCEF #143, p. 16] for a pendente lite support award to him in the sums $5,109.94 [child support above the cap] and $3,212.80 [maintenance above cap] [NYSCEF #143, p. 16] or — at least, up to the statutory cap — of $2,209.94 in child support and $712.85 in maintenance, retroactive to July 25, 2023 [NYSCEF #143, p. 21]. The father argues that if the Court does not calculate support based on the parties' 2022 incomes, then the Court should award him support based on his and the children's needs "based on my recitation of our expenses in my Net Worth statement [NYSCEF #143, p. 17]. 
The Mother's Initial Statement of Net Worth
The mother asserts that the following monthly expenses for the family in her initial Statement of Net Worth from September 2023, supported her initial application for $33,980 monthly in unallocated, tax-free support [NYSCEF #43, p. 32-33]: Food $5,650; Take-out/Dining Out, $3,000 (includes children); Clothing, $5,400 (includes children); Unreimbursed medical and pharmaceutical, $400; therapy, $4,300; Household help, $6,880; Recreation, $2,100; Vacations, $5,000; Miscellaneous, $5,700 (includes personal grooming; beauty aids/cosmetics/drug items; books/magazines/newspapers; gifts; and, postage, stationary and greeting cards; pet and vet expenses; commuting expenses, excludes charitable contributions); Other — Cellular telephones and Ipads $500 Includes children; Automobile, $4,350 (includes gas, monthly car payment of $2,950, car wash and detail, parking and tolls): TOTAL $38,980. The mother asserted in September 2023 that she was then earning approximately $5,000 net income so after reducing the claimed $38,980 by $5,000, she required financial support from the father of $33,980 monthly to support her marital standard of living.
The mother subsequently reduced her request for pendente lite support in January 2024 after it was clear that she was not returning to the marital residence or receiving interim custody of the children. In her affidavit dated January 16, 2024, in support of her pendente lite application and in opposition to the father's cross application for support the mother amended her pendente lite support request to $16,230 monthly based on the following: food, $1,500; take-out, $1,000; clothing $1,500; unreimbursed medical and pharmaceutical, $400; household help, $1,500; recreation, $700; vacations, $1,000; miscellaneous, $5,700 (personal grooming, beauty aids, self-maintenance/care at "historic levels"); cell phone, $500 (includes children); transportation, $1,800 = TOTAL $21,230 less $5,000 = $16,230 [NYSCEF #226, p. 11]. 
The Mother's Updated Net Worth Statement [February 18, 2025] [NYSCEF #578]
In her updated Statement of Net Worth dated February 2025, the mother listed the [*9]following monthly expenses: rent, $5,000 [FN3]
; mobile phone, $480 [FN4]
; groceries/prepared foods, $2,000; dining out, $500; clothing (self), $250; dry cleaning [FN5]
, $400; unreimbursed dental, $80; unreimbursed vision, $125; unreimbursed pharmaceutical, $100; beauty parlor, $300; toiletries, $500; books, $100; commutation expenses, $1,500 [FN6]
; S. P., $300; hair and urine testing, $235: TOTAL, $10,070. She contends that these expenses are greatly reduced from her application in January 2024 because the father has financially forced her to live far below the parties' lifestyle during the marriage and she has no access to any further source of loaned funds. The mother claimed at oral argument that she has no place to "live" in New York so she spends time sleeping in her "office" or traveling out of state to live with her parents for periods of time.
The mother's Net Worth Statement includes the following next to most requests for information related to assets and liabilities:
ALL INFORMATION REGARDING THE PARTIES' PERSONAL ACCOUNTS REMAIN IN PLAINTIFF'S SOLE CONTROL AND POSSESSION.
The mother lists only one liquid asset account which is a business checking account which she avers has $10,338 [NYSCEF #578, p. 9]. She contends that this is the only financial account she has ever had access to during the marriage. She concedes that she has had to utilize business funds to pay personal expenses since being excluded from the marital residence because the father has refused to provide any financial support and removed her access to the financial resources she had during the marriage.
She reports $596,363 in personal liabilities in the form of loans taken "to pay for legal and expert fees and living expenses" [NYSCEF #578, p. 21 and p. 26]; however, these reported "loans" are as follows: January 2025 $7,800.00; February 2024 $40,000.00; March 2024 $55,750.00; April 2024 $30,000.00; May 2024 $42,812.00; June 2024 $36,000.00; July 2024 $73,000.00; August 2024 $26,000.00; September 2024 $17,689.88; October 2024 $16,000.00; November 2024 $4,000.00; December 2024 $4,510.51; August 2023 $4,400.00; September 2023 $4,044.00; October 2023 $26,456.00; November 2023 $37,400.00; December 2023 $20,500; 2023-2024 for living expenses loan from parents approximately $150,000. The mother provided several promissory notes including a promissory note from herself to her business and another from her to her parents [NYSCEF#239].
The mother reports that she has incurred the following in counsel fees, expert fees and/or supervised parenting time fees: Offit Kurman [Ms. Rodriguez, Esq.] $375,870.18 (with $63,725 [*10]outstanding); Phillips Nizer, $4,080.00; Howard Benjamin, Esq. $45,000.00; Wayne Alleyne, Esq. (attorney for the children) $28,374.50 (with $3,566.00 outstanding); CFS $20,812.50; Dr. Pizarro $36,000.00; Natasha — Orelius (Supervisor) $2,200.00; Beth Ornstein (Supervisor) $1,537.50; Chaya Pollack (Supervisor) $1,875.00; Eisner Ampner $19,797.46; $9,979.46 TASC Testing (from October 2023 to date); $3,525.00; Steven Paymer $10,625.00; Arthur Aidala $40,000.00; Yoram Nachimovsky $156,250.00 [FN7]
; Esther Morgenstern, Esq. (of counsel to above) $5,000; T& M USA, LLC Computer Services Daniel Apollino $2,721.88. It is not possible to assertation the portion of this related only to this matrimonial action on the information presented [NYSCEF #578, p. 25]. Prior counsel for the mother represented that the mother's retaining numerous attorneys at the beginning of the litigation was a result of her "not having time to vet counsel" when the litigation initially started because she was excluded from the marital residence ex parte, deprived of any access to the children and "everything was very fast moving" [oral argument, February 28, 2025, p. 9].
The Father's Updated Net Worth Statement [February 25, 2025] [NYSCEF #585]
The father listed the following monthly expenses: mortgage, $5,049.50; HELOC, $162.33; real estate taxes, $582.41 (upstate house); homeowner's insurance, $445 (Brooklyn house) and $169 (Upstate house); HOA (Upstate house) $416.66; gas (Brooklyn house), $666; electric (Brooklyn, $1,100) and (upstate, $333); landline telephone (Brooklyn), $120; mobile phone (plaintiff), $145; cable (Brooklyn, $300) and (Upstate, $300); alarm, $120; water, $346 (Brooklyn); groceries, $3,200; dining out, $3,000; clothing (self), $800; clothing (children), $1,000; dry cleaning, $100; life insurance, $1,000; fire, theft and liability and personal articles policy, $166; automotive insurance, $904; umbrella policy, $28; medical insurance, $3,955.89; unreimbursed medical, $200; unreimbursed dental, $500; unreimbursed optical, $50; unreimbursed pharmaceutical, $100; unreimbursed psychotherapy, $1,000 (one of the children); orthodontia, $625 (one of the children); household repairs, $1,000; gardening, $150; nanny, $7,310; automobile lease, $1,426; gas, $458; repairs, $166; car wash, $60; parking/tolls, $150; yeshiva, $2,411.66; school supplies, $100; tutoring, $8,170; school events, $100; children's extracurriculars, $200; vacations, $2,083; movies, $100; activities for self, $200; summer camp, $1,191; birthday parties for children, $125; beauty parlor, $150; toiletries, $200; books, $50; gifts to others, $50; charitable contributions, $500; religious organization dues, $300. 
The father did not include a monthly total for these expenses; however, calculation of the expenses listed places his representation of his monthly expenses at: $57,490.34. This is more than $10,000 a month than he represents he earned in 2022. Annualized, the father concedes that his expenses are $689,884.08 ($57,490.34 x 12 months = $689,884.08). 
The father, in effect, contends that the entirety of the family's lifestyle is a result of ongoing "loans" from his father which, he estimates, total more than $3,000,000 [NYSCEF #585: plaintiff-father's Net Worth Statement]. The father does not dispute that his father provided him money to support the family for many years prior to commencement. The father claimed at oral argument that he consistently did not earn a substantial profit from the clothing business on Kings Highway despite continuing to operate the business for many years.
The father asserts that the mother's representation in her initial Statement of Net Worth [*11]from September 2023 that the family expenses were approximately $34,000 monthly [FN8]
is "inflated and frankly outrageous, unsupported and grossly overstated" [NYSCEF #143, p. 21]. The father asserts that the mother spent "erratically and recklessly" in the months before he commenced the divorce and that he was unable to keep up with her spending even after using his "life savings" so the parties' credit suffered until his father "loaned [emphasis in original]" him the money to pay off the mother's spending [NYSCEF #143, p. 18].
While the father characterizes the mother's rendition of the marital lifestyle in her September 2023 Statement of Net Worth as "inflated and frankly outrageous", in his Statement of Net Worth, the father avers that the expenses for him and the children exceed $57,000 monthly. Since the father represents that the family's monthly expenses are more than $20,000 higher than the expenses claimed by the mother it does not appear, at this time, that there is a basis for the father's criticism of the mother's representation as to the family's lifestyle and expenses.
Lifestyle During the Marriage
The mother avers that she has no financial documents to determine the father's "financial position" but contends that during the marriage he "either earns or is provided over a million dollars a year" and that he earned at that level "for years and maintained the family at a particular level of lifestyle" during the marriage [NYSCEF #43, p. 27]. The mother contends that during the marriage "there were few constraints on our spending" [NYSCEF #43, p. 29]. In support, the mother annexed copies of her credit card statements from September 2022 through February 2023 showing the following monthly charges [NYSCEF #71]: September 2022, $45,005.76; October 2022, $44,839.93; November 2022, $25,005.10; December 2022, $32,668.50; January 2023, $54,886.58; February 2023, $46,553.61. It appears that these monthly balances were paid each month. Most of the line items for these statements are for payments made through Apple Pay so it is not clear what each payment is for; however, there are numerous charges for thousands of dollars for beauty spas and for luxury clothing brands.
It is undisputed that the parties own a home in Brooklyn and a second home in Upstate New York. The mother contends that they spent $60,000 annually on vacations; the parties two older children attend private Yeshivas; the parties' oldest two (2) children attend sleepaway camp at over $8,000 a summer each; the parties employed a live-in nanny at nearly $8,000 monthly; the children have the benefit of extensive private tutoring (the father concedes that the monthly tutoring along is $8,170) and enjoy extracurricular activities; and that she "also regularly cooked large Shabbat [sic] meals for our family and meals for Rosh Hashanah, Yom Kippur, Sukkot, and Hanukkah" [NYSCEF #43, p. 30-31]. 
The father does not specifically dispute the mother's claims related to lifestyle — not even her assertion that she spent thousands of dollars a month in beauty maintenance — but he contends that he should not be required to keep paying these expenses. Incredibly, the father does dispute some of the mother's representations as to lifestyle including the exact amount the nanny was paid each week — the mother contends that the nanny was paid $2,000 weekly while the father contends that the nanny was paid nanny $7,310 monthly. 
The mother asserts that during the entire marriage the father was "primarily responsible [*12]for the financial aspects of our life" because she did not earn income and that she was "never privy to what funds we would use to pay our expenses" but that she always had use of a "secondary credit card" in her name: she contends that her charges to that credit card averaged $40,000 monthly [NYSCEF #43, p. 28]. She avers that the family also used "other cards and the significant cash we used" [NYSCEF #43, p. 28]. She asserts that the father's representation that he has limited income or access to financial resources cannot be reconciled with the parties' extremely comfortable lifestyle during the marriage asserting that the parties paid the nanny alone "$92,880 annually" [NYSCEF #226, p. 2]. She asserts that even if the father in fact always earned limited income from his clothing business on Kings Highway in Brooklyn then he had unlimited access to financial resources from his father. She contends under oath that the father took his financial statements to his father — her father-in-law — every Friday and returned "home with wads of cash and other gifts from his father" [NYSCEF #43, p. 28. She contends that the father has unlimited access to the financial resources of his father who, she avers, "sold over $100 million of nursing homes" [NYSCEF #43, p. 28]. 
The father asserts that there is no basis for the mother to bring his father's financial resources into the parties' divorce action while also asserting that any financial security the family enjoyed during the marriage was a result of the generosity of his father. At the same time, the father contends that his father always paid for some of the family's expenses like their annual luxury vacations. The father contends that these financial resources should not be imputed to him for purposes of interim support because there is no obligation for his father to continuing to provide the support and/or that this support as all resulted in "loans" [NYSCEF #144, p. 8]. The father's counsel argues that the Court must deny the mother's request to impute income to the father because the mother failed to show that there "is any steady consistent stream of income" provided by the father's family and that "where the [mother] has been evasive about her own income" [NYSCEF #144, p. 8]. 
The mother contends that the father is attempting to avoid imputation of income to him for the regular infusions of financial resources received from his father by calling them "loans" but that there could be no reasonable expectation of repayment of any such "loans" based on the father's representation that he always earned limited income during the marriage while asserting that he already owes his father more than $3,000,000 in "loans" [NYSCEF #226, p. 2]. The mother contends that the extensive financial resources the family consistently received from the father's family should be imputed to the father as income for support purposes because, she contends, the father's family is funding his life "disguised as loans to evade gift tax implications" and that these are not [NYSCEF #226, p. 2]. 
The father also asserts that no income should be imputed to him because the mother had not filed her 2022 income tax returns when she sought emergency pendente lite relief initially in 2023.
Pendente Lite Imputation of Income
The father's representation as to his income and/or access to financial resources defy credibility and the Court rejects, pendente lite, the father's application to award maintenance on his reported income of $45,000 annually. Clearly, whether through his own income or through a steady stream of financial infusions, the father's access to financial resources made him the sole financial provider for the family throughout the marriage until at least August 2020 when the mother stated her PPE supply business. The father does not allege that the mother brought any financial support to the family from 2008 to 2020. While the nature and source of this steady [*13]flow or infusion of financial resources is not known at this time, it was available to fund the family's lifestyle during the marriage and it appears only now that the mother seeks maintenance that the father contends that it is suddenly unpredictable and/or unavailable. 
She requests that the father be ordered to continue paying the following direct expenses [NYSCEF #43, p. 31]:
1) Plaintiff to maintain and to pay for the health insurance we have through REDACTED and cover all the children's unreimbursed medical expenses, including [the youngest child's] multiple therapies at a cost of approximately $4,300 per month.
2) Plaintiff to continue to pay all carrying costs associated with the Marital Residence and the [UPSTATE NEW YORK] Residence, during the pendency of this action, including any loan payments, insurance, utilities (including alarm, cable landline, and internet), water, extermination, snow removal and necessary repairs and upkeep.
3) Plaintiff to continue to pay 100% of all the expenses for the children's private school and summer camps, including, but not limited to, all the registration, tuition, fees, books, supplies, uniforms and gear, transportation and supplies/clothing.
4) Plaintiff to continue to pay for academic tutoring for the parties' oldest daughter, which is consistent with the services that we provided to her prior to the commencement of this divorce action. I request that Plaintiff be directed to pay 100% of all tutoring expenses for our daughter.
5) Plaintiff to pay my automobile insurance.
6) Plaintiff to pay all dues and related expenses in connection with our membership with Rabbi [REDACTED], [REDACTED] and for the Synagogue in [UPSTATE NEW YORK], including any fees assessed with respect to our attendance at services on the Jewish High Holidays. The Mother's Income
The mother contends that during the marriage she was a wife, mother and homemaker and that the family was exclusively reliant financially on the father from 2008 until August 2020 [NYSCEF #43, p. 13] but concedes that she was briefly able to earn income from a pandemic-business related to PPE supplies. She represents that her ability to earn the level of income she earned during the height of the global COVID-19 pandemic from the PPE supplies business is no longer available to her and that she does not have marketable skills that would allow her to earn anything similar to that income in another market. The father did not allege much less establish that the mother has, at this time, workplace skills that are transferrable to another industry where the mother would be able to earn anything like a similar income. There is no indication that the mother during the marriage obtained an infusion of funds from her family.
PPE Business
The mother contends that from March 2020 to June 2020 the father and her brother engaged in an informal business relationship obtaining and reselling PPE supplies but that relationship disintegrated in June 2020 and resulted in a lawsuit where the plaintiff-father claimed that the brother owed him money related to the business relationship. The mother contends that because of that lawsuit her relationship with her brother has suffered and they do not speak anymore [NYSCEF #226, p. 14]. The mother contends that the plaintiff-father deposited all proceeds he made from his PPE deals into bank accounts in his name only and that it appears that he did not report any of this income on the parties' 2020 income tax returns [*14][NYSCEF #226, p. 15]. 
The mother contends that after observing the father's success selling PPE she believed she could obtain some financial independence by capitalizing on the business model and she began operating a PPE supply business — medical gloves, masks and COVID-19 testing kits — in or about August 2020. She contends that the father continued to buy hundreds of thousands of dollars in PPE supplies through her business and that he was also selling them and not reporting that income.
She contends that the plaintiff rejected her request to loan her $20,000 to start her PPE importing business so she pawned her "engagement bracelet, and my wedding ring and a couple of pairs of earrings" [NYSCEF #43, p.13] to have startup capital. She avers that she did earn income in 2021 and that she had a "banner year" in 2022 due to supply chain issues resulting from the war in the Ukraine but that her father-in-law and her husband did not like that she was "no longer entirely dependent" on the family's finances and that the domestic violence by the plaintiff-father escalated [NYSCEF #43, p. 14]. 
The mother contends that in the six (6) weeks prior to commencing the divorce action the father stopped providing any financial support and terminated her access to credit cards so she was "forced to spend any savings I retained from my earnings to cover all the children's (during the six-week period) and my current living expenses" and that she "cannot afford any semblance of the marital lifestyle without support from Plaintiff, who up to 2020 was the sole financial earner for our family" [NYSCEF #43, p. 27].
The mother represents that while the global pandemic and the war in Ukraine provided her a unique market to earn money importing PPE supplies this business opportunity was "situation dependent" on the global pandemic and the supple chain demands resulting from the war in Ukraine and that since those "have also been largely resolved" her income is "not reliable or predictable" [NYSCEF #43, p. 27]. She represents that because the pandemic-era demand for PPE supplies has ended and the pandemic-based PPE business is no longer a viable source of income. 
When she initially filed her application for pendente lite support in 2023, she averred that she has "approximately $5,000 per month after taxes to pay my expenses" [NYSCEF #43, p. 28]. She contends that of the approximately $100,000 she earned in 2022 "[a] large amount of those funds went back into my business to buy furniture for my office" [NYSCEF #43, p. 28]. At the time of her pendente lite application in 2023, she had not filed her 2022 personal income tax returns. She filed copies of her 2022 and 2023 personal income tax returns in February 2025 in response to a direction from this Court. The mother reported a loss of nearly $-40,000 in 2023 as detailed below. She contends that any income she was able to briefly earn in between 2020 and 2022 due to demand for PPE because of the pandemic is gone and that she has no way of earning similar income again and that she never earned any income during the marriage.
The Parties' 2020 and 2021 Joint Tax Returns
The father asserts that the mother earned approximately $250,000 annually in income from her business; however, the parties filed joint personal income tax return in 2020, which reports no taxable income and lists the father's occupation as "clothing store" and the mother's occupation as "N/A" [NYSCEF #586]. Similarly, the parties' 2021 joint personal income tax return reports no taxable income and lists the father's occupation as "clothing store" and the mother's occupation as "N/A" [NYSCEF #580]. The father concedes that there is no income reported for the mother on these joint tax returns from 2020 and 2021 but contends that "[the [*15]mother] is an adult who should have provided her income to our accountant if she intended to pay taxes on it" [NYSCEF #143, p. 17]. The father does not dispute that despite his belief that the mother was earning more than $250,000 at that time, he still filed jointly with her knowing that no income was listed for her. The mother contends that the father never showed her the joint tax returns prior to filing them or at any time during the marriage. 
The Father's 2022 Income Tax Return
The father provided his 2022 personal income tax return [married filing separate] in February 2025 and reported adjusted gross income of $45,783 with taxable income of $14,251 [NYSCEF #588].
The Mother's 2022 Income Tax Return
The mother provided her 2022 personal income tax returns [married filing separate] attached to her updated Net Worth Statement dated February 18, 2025 [NYSCEF #578, p. 5]. The mother represents that during her "banner" year in 2022 her taxable income was: $157,624. 
The father contends that the mother has not accounted for how she used this income so he should not have to pay her any pendente lite support. The mother contends that she used approximately $100,000 of her business income to furnish her office. The father contends that the mother paid for her office furniture using his credit card (NYSCEF #143, p. 14). The mother contends that she paid the father back from the business account for these purchases. The Court notes that the father concedes that he has provided no financial support to the mother during this litigation and that the mother has had to pay for litigation costs and living expenses on her own. The mother also contends that she has had to pay for the children's cell phone plans, in part, so she could have a chance to speak with them occasionally during this litigation.
The Mother's 2023 Income Tax Returns
The mother provided her 2023 personal income tax return [married filing separate] attached to her updated Net Worth Statement dated February 18, 2025 [NYSCEF #578, p. 5]. The mother represents that her 2023 taxable income was: $-39,153 [NYSCEF #578, p. 32] which appears to come from nonpassive loss from the PPE business [NYSCEF #578, p. 36]. 
2024 Income Tax Returns
Neither party has provided copies of 2024 income tax returns.
Imputation of Income to the Mother
The mother represents that once the pandemic began to subside, the PPE supply business no longer generated anything like the income it did during the height of the pandemic. The mother's rendition of her pandemic-based business and her explanation of how that source of income ended appears credible on its face subject to exploration at time of trial. Given that there does not appear to be any dispute that the mother did not earn income prior to the marriage and did not earn income during the marriage and that she only earned income for a year or two during the pandemic there is no record before the Court —at this time — to support the Court imputing income to the mother for calculating pendente lite support in addition to the income she concedes even though she represents that she is has no ability to earning income now (see generally Skinner v Skinner, 271 AD2d 679 [2 Dept.,2000]; see also Gina P v Stephen S., 33 AD3d 412 [1 Dept.,2006]; see also O'Connor v O'Conner, 241 AD2d 648 [3 Dept.,1997][holding that nonrecurrent payment that artificially inflated a party's earning capacity should not be utilized to determine ongoing support obligation]). If the father believes that a claim for [*16]wasteful dissipation is appropriate for the income that was allegedly used during this time the issue can be raised at the trial on the financial issues and the mother will also have the opportunity to raise any arguments related to whether these funds were wastefully dissipated or whether she was forced to spend business funds to pay living expenses after the father unilaterally terminated her access to marital funds she had access to during the marriage for living expenses.
The Court notes that the mother represented in her initial application for pendente lite relief that she was earning $5,000 monthly and she reduced her request for pendente lite support from more than $21,000 to approximately $16,000. In her opposition to the father's application for support she averred that "[s]ince the filing of my September 2023 moving papers, I am currently in a different position" and that "in 2023 and currently I am not earning $5,000 per month (or $60,000) annually, yet for purposes of interim support I have reduced my expenses by $5,000 per month" [NYSCEF #226, p. 11]. While there does not appear, at this time, to be a basis for the Court to have imputed this amount of income to the mother pendente lite under the facts and circumstances, the Court will include this annual "imputed" income to the mother for the purposes of calculating pendente lite maintenance based on her submission.
Loans
The father contends that the mother's rendition of her finances cannot be believed because she has paid numerous attorneys to represent her in this litigation and in the litigation pending between her and the father's father because he allegedly punched her in the face [NYSCEF #143, p. 21] and, in effect, because she has managed to pay her living expenses on her own in the nearly two (2) years since he commenced this divorce action.
The mother concedes that she has had to borrow several hundreds of thousands of dollars from friends and family to sustain her counsel fees in this litigation which the father commenced and that these counsel fees are so high because she contends the father is engaging in a "scorched earth" litigation posture [NYSCEF #226, p. 9]. She contends that it was only because the father unilaterally changed the financial status quo when he commenced the divorce that she was forced to seek loans to meet her living expenses because he removed her access to all financial resources including the credit card she had, she avers, unfettered access to during he marriage. The mother avers that her sources of loans are expended and that she has no alternative source of funds to draw on to support herself anymore. She represents that she has been forced to live in her office space because she does not have the financial means to get an apartment and that she must rely on prepared foods and sending clothes out for cleaning because she has not had access to a kitchen or laundry where she lives.
Here, the Court must differentiate, pendente lite, the "loans" received by the father throughout the marriage and the loans the mother borrowed to meet her counsel fees and her daily living expenses during this litigation. The Court will not under the facts presented — pendente lite — to impute income to the mother, the less-monied spouse, who was forced to borrow from friends and family to meet living expenses where the father, the monied-spouse, unilaterally discontinued the status quo financial circumstances and refused to pay any support to the mother for years while simultaneously spending nearly $1.5 million dollars ($1,500,000.00) in counsel fees to his attorney, in this litigation and the parties have not even commenced the custody trial.
At this rate, the father appears willing to spend an unlimited amount in counsel fees [*17]rather than provide any support to the mother. The father's expenditure on counsel fees alone — without even considering the more than $57,000 monthly in expenses he spends for himself and the parties' children — belies his representation that he is unable to pay any support. The unfettered financial resources the father appears to have access to sustain the lifestyle he enjoys while also funding this litigation at this level raises significant credibility questions related to his financial representations.
The father's income and/or access to financial resources were the sole source of the family's financial support throughout nearly the entire marriage and the mother has offered a credible explanation for why she was only able to provide financial contribution for a brief period during the pandemic. 
The Parties' Financial Accounts and Tax Returns During the Marriage
The mother contends that she had no knowledge of the father's financial accounts during the marriage but that the family spent lavishly and that there were no limits on her spending during the marriage. The mother avers that she never had a bank account until 2020 when the pandemic-business started and that she was not named on any joint accounts with the father during the marriage [NYSCEF #226, p. 12]. 
The mother contends that the father never showed her the parties' joint tax returns during the marriage and that she only ever saw them after she requested them in this litigation and that she was "shocked to discover that Plaintiff is claiming little to no income" [NYSCEF #4, p. 29]. She asserts that the parties' lifestyle and spending throughout the marriage does not reflect the "de minimus income reflected on our returns" [NYSCEF #43, p. 29]. She contends that she only learned during this litigation that business tax returns for the pandemic PPE business were not filed timely or that the income she earned from the business was not included on the parties' joint 2020 income tax return. The father contends that it is the mother's fault that her income in 2020 was not reported on the parties' joint income tax returns; however, he does not dispute that he knew she earned income in 2020 and yet he still submitted joint income tax returns with her without any income information from her [NYSCEF #282, p. 6]. 
Both parties assert that the other is attempting to distract the Court from their true financial circumstances: the mother contends that the father is attempt to distract the Court with claims that she can continue to earn the income she earned for a limited time immediately prior to the divorce and the father contends that the mother is attempting to distract the Court from considering the income she earned during the pandemic by focusing on the fact that the father was the sole financial supporter of the family for over a decade until immediately prior to commencement. What is clear is that when looking at the history of this marriage the status quo was that it was the father alone who was financially supporting the family and that any additional income the mother started earning a year or two before commencement from the pandemic-based PPE business was not the status quo. At the financial trial, the parties will have a full and fair opportunity to offer testimony and any admissible evidence subject to cross-examination as to what the income from that business was used for; however, it is clear that this family did not survive financially on the mother's financial contributions since she did not work during most of the marriage and while the father represents that throughout the marriage he has been engaged in a "small, struggling clothing" business on Kings Highway in Brooklyn it is undisputed that it was solely his income and/or his access to financial resources that funded this family's very comfortable lifestyle. As many questions as there may be about what happened to the income from the PPE business in 2021 and 2022 there appear to be at least as many — or [*18]more — questions about how the father single-handedly financially supported the very comfortable lifestyle of this family for almost fifteen (15) years from his "small, struggling clothing store". 
The Court declines to adopt this position under the facts presented. Here, the father has never denied that the mother did not work outside the home from 2008 when the parties married until August 2020 when the pandemic-based PPE business was started. Clearly, the father's access to financial resources — either by way of his income or by way of financial resources of others at his disposal — consistently funded this family's lifestyle throughout the marriage. The father does not allege that his financial contribution to the family's budget in anyway decreased from 2020 until the time of commencement, rather, he contends that the mother's contribution dramatically increased. These financial allegations are certainly issues for trial. It appears, at this time, that any additional financial resources the mother's PPE business brought into the marital estate during the pandemic may have augmented that baseline financial reality for a period of time but she was clearly not the monied-spouse during this marriage nor will the Court find, at this time, that she was the monied-spouse. If, as the father claims, the mother has "something regarding her income to hide" that is, on the facts and circumstances presented here, a final determination issue for trial [NYSCEF #144, p. 3].
Procedural Defect
The father's counsel asserts that the mother's application for pendente lite relief is "deficient on its face, as a matter of law" because it "contains no attachments" other than a draft K-1 from 2020 and 2021 [NYSCEF #144, p. 2]. He contends that the mother's Net Worth Statement is procedurally defective and that the Court should deny her request for pendente lite support. 
22 NYCRR 202.16[b] requires as follows:
Sworn statements of net worth, except as provided in subdivision (k) of this section, exchanged and filed with the court pursuant to section 236 of the Domestic Relations Law, shall be in substantial compliance with the Statement of Net Worth form contained in appendix A of this Part [emphasis added].
22 NYCRR 202.16 (k) Motions for Alimony, Maintenance, Counsel Fees Pendente Lite and Child support (other than under section 237(c) or 238 of the Domestic Relations Law) provides as follows:
Unless, on application made to the court, the requirements of this subdivision be waived for good cause shown, or unless otherwise expressly provided by any provision of the CPLR or other statute, the following requirements shall govern motions for alimony, maintenance, counsel fees (other than a motion made pursuant to section 237(c) or 238 of the Domestic Relations Law for counsel fees for services rendered by an attorney to secure the enforcement of a previously granted order or decree) or child support or any modification of an award thereof:
(m) Such motion shall be made before or at the preliminary conference, if practicable.
(2) No motion shall be heard unless the moving papers include a statement of net worth in the official form prescribed by subdivision (b) of this section.
(3) No motion for counsel fees and expenses shall be heard unless the moving papers also [*19]include the affidavit of the movant's attorney stating the moneys, if any, received on account of such attorney's fee from the movant or any other person on behalf of the movant, the hourly amount charged by the attorney, the amounts paid, or to be paid, to counsel and any experts, and any additional costs, disbursements or expenses, and the moneys such attorney has been promised by, or the agreement made with, the movant or other persons on behalf of the movant, concerning or in payment of the fee. Fees and expenses of experts shall include appraisal, accounting, actuarial, investigative and other fees and expenses (including costs for processing of NYSCEF documents because of the inability of a self-represented party that desires to e-file to have computer access or afford internet accessibility) to enable a spouse to carry on or defend a matrimonial action or proceeding in the Supreme Court.
(4) The party opposing any motion shall be deemed to have admitted, for the purpose of the motion but not otherwise, such facts set forth in the moving party's statement of net worth as are not controverted in:
(m) a statement of net worth, in the official form prescribed by this section, completed and sworn to by the opposing party, and made a part of the answering papers; or
(ii) other sworn statements or affidavits with respect to any fact which is not feasible to controvert in the opposing party's statement of net worth.
(5) The failure to comply with the provisions of this subdivision shall be good cause, in the discretion of the judge presiding, either:
(m) to draw an inference favorable to the adverse party with respect to any disputed fact or issue affected by such failure; or
(ii) to deny the motion without prejudice to renewal upon compliance with the provisions of this section.
The father's counsel asserts that this Court should exercise its discretion and deny the mother's application under 22 NYCRR 202.16(k)(5) which provides, as relevant here:
The failure to comply with the provisions of this subdivision shall be good cause, in the discretion of the judge presiding, either: (i) to draw an inference favorable to the adverse party with respect to any disputed fact or issue affected by such failure; or (ii) to deny the motion without prejudice to renewal upon compliance with the provisions of this section.
The Court rejects the father's contention that, under the facts and circumstances presented, the Court must exercise its discretion and reject the mother's application for pendente lite relief based upon the mother initially only annexing draft tax documents and not annexing the prior years tax return; however, 22 NYCRR 202.16(k) specially provides that the requirements of the subdivision can be waived for good cause shown.
In Zelenka v Hertz, the Appellate Division, Second Department noted that CPLR 2001 permits a court "[a]t any stage of an action," to disregard a party's "mistake, omission, defect or irregularity . . . if a substantial right of a party is not prejudiced" where finding that the trial court could considered a party's statement of net worth which was filed separately from her application for pendente lite relief and where her retainer agreement and counsel fee invoices were submitted for the first time in her reply papers because the defendant had an opportunity to respond and to submit a sur-reply (230 AD3d 539 [2 Dept.,2024]). The mother gave a credible explanation of why she was unable at the initial filing of the Statement of Net Worth to provide [*20]more financial and tax documentation and, given the procedural history of this case prior to it being assigned to this Court, the Court finds that good cause has been shown to waive strict compliance with the Statement of Net Worth forms. In a supporting affirmation, one of the mother's prior counsels asserted that at the initial filing of the Statement of Net Worth the mother presented all the documentation she had and that when she was able to provide completed tax documents she did so [NYSCEF #257, p. 3]. The Court further notes that the parties have both filed updated Statements of Net Worth and provided more current tax returns, including the mother's 2022 and 2023 personal income tax returns.
In reaching this determination, the Court notes that the father avers in his affirmation in opposition to the mother's application for pendente lite support that "I started the business with her" [NYSCEF #143, p. 17]. In support of his assertion that he was involved with the forming of the business, the father asserts that the parties named the business using the first initial of each of their names [NYSCEF #143, p. 17]. 
For the father to asset that he was fundamentally involved in this business but then attempt to undermine the mother's application for pendente lite support by asserting that he has no knowledge of the financials and, moreover, that the mother should be solely responsible for any lack of tax returns related to that business does not appear, at this time, a sufficient basis for the Court to exercise its discretion and deny the pendente lite application. The mother avers that she provided the business records to the accountant that father used and was not aware of what happened with the taxes after that. The father offered no explanation for why, if he started the business with the mother and was so involved with the business why any alleged failure to file business tax returns does not rest equally at his feet. Certainly, there are questions around the financial circumstances of what the mother characterizes as, in effect, a pandemic-reliant business; however, these are issues to be address at trial. 
Unlike the cases cited by the plaintiff, here the mother provided a Net Worth Statement and annexed the financial documentation available to her and offered a plausible explanation for why additional documentation was not available. In the cases cited by plaintiff, the Courts exercised discretion to deny without prejudice the pendente lite applications where no Net Worth Statements were provided and/or no financial documentation was provided. 
This pendente lite application was filed in 2023 and not heard until this matter was assigned to this Court after an extensive procedural history, including numerous recusals.
Given the totality of the facts and circumstances, this Court does not find that it would be an appropriate exercise of discretion to deny the application and denial is not required by the rules or the case law rather the Court is given discretion.
In exercising that discretion, this Court relies on the fact that the mother does not dispute that the family benefited from the financial resources the PPE business brought during the COVID-19 pandemic. There are clearly questions surrounding where that money went and that is certainly a subject for inquiry at time of trial where the parties will have an opportunity to provide an accounting of those monies. However, here, it appears that the father would prefer to distract the inquiry away from the undisputed fact that for most of this marriage, this family was solely financially supported by his income or his access to financial resources.
The father — tellingly — offered no allegation that his financial circumstances changed during the year or two at the end of the marriage — immediately prior to the commencement — when he alleges that the mother earned income. Assuming, arguendo, even if the mother's representations as to her financial circumstances are determined at trial to be wholly inaccurate, [*21]as the father contends, the father has not addressed how that fundamentally changed the overall financial structure of the family which he clearly had been solely financially supporting on his own either through his income or access to financial resources. At this time, the father has made no showing that any income the mother brought into the marriage because of the pandemic-based PPE business was not an anomaly. That is true whether it was the lower income the mother represents or whether it was the greater income the father asserts she earned. Either way, at this time, it appears that whatever amount is proven at trial that the mother earned in those years was surplus to the family's regular financial support which the father has, at this time, wholly failed to explain with any semblance of plausibility.
So while this Court recognizes that the mother's Net Worth Statement did not include her 2022 income tax return and the Court may draw a negative inference against her (see Trevino v Pray, 217 AD3d 592 [1 Dept.,2023]); however, the Appellate Division, First Department recently held in Perrone v Perrone, 224 AD3d 518 [1 Dept.,2024], that there can be facts and circumstances that allow it to be a permissible exercise of the trial court's discretion not to make an incomplete Net Worth Statement fatal to an application for pendente lite relief. 
Here, the Court is also faced with the father's lack of candor related to his access to financial resources. The father's contention that the Court should calculate any support award using annual income for him of $45,000 because that is what he reported on his tax returns clearly is belied by the father's own representation as to his expenses which he concedes exceed $57,000 monthly. While the father attempts to disavow himself of many of the mother's claimed expenses he does not dispute that the live-in nanny alone was paid more annually ($87,720) than he reports he earned (approximately $45,000) in 2022 while the combined annual expenses ($165,120 [FN9]
) for the nanny ($87,720) and tutoring for the parties' oldest child ($6,450 monthly/$77,400 annually) exceeds his representation as to what he earned in any reported year. The father concedes that he has financial resources to meet these monthly expenses — revealing no commensurate debt — other than his claim that he has, in effect, funded the family's expenses throughout the marriage with "loans" from his father. This explanation defies any semblance of credibility under the facts and circumstances: even if there were loan documents presented, the father will have to address how any repayment of more than $3,000,000 in alleged loans would ever be possible based upon his claimed annual income of $45,000. 
Additionally, the father concedes that his attorney has been paid nearly $1.5 million ($1,500,000.00) to represent him in this litigation without providing a credible or forthright explanation for how he is able to maintain this level of spending. His contention that he can fund his lifestyle and this litigation through allegedly unfettered "loans" from family while entirely disavowing himself of the ability to provide any financial support to the mother who was entirely financially dependent on him throughout the marriage until the eve of commencement is disingenuous and misplaced. The Court will not adopt pendente lite the plaintiff's position that after years of enjoying the lifestyle created — it appears — by the grandfather's financial generosity — that the father is not financially responsible to continue that lifestyle where there does not appear to have been any change in the facts and circumstances and where it is clear from the father's own Statement of Net Worth that he continues to enjoy the same level of affluent lifestyle that appears to have been the status quo during the marriage.
Clearly, the plaintiff-father is not being transparent about his access to financial resources. Further, it appears that the plaintiff-father is willing to use the power that comes with his unfettered access to wealth in this litigation having already spent nearly $1,500,000.00 in counsel fees and the trial on custody, parenting time, and order of protection has not even started. Let alone what plaintiff's counsel represents are extensive financial and tax issues which will also need to be tried.
Imputation of Income to the Father
It is well-established that "[a] court need not rely upon a party's own account of his finances but may impute income based upon the party's past income or demonstrated future potential earnings" (Bailey v Bailey, 232 AD3d 574, 576 [2 Dept.,2024]) and the Court retains discretion to look at other sources of financial means (DRL 240[1-b][5][i]-[ii],[iv]). Moreover, the support obligation "is not necessarily determined by his or her current financial condition, but rather by his or her ability to provide support" (Bailey v Bailey, 232 AD3d 574, 576 [2 Dept.,2024]). 
Furthermore, " '[i]mputation of income may be based upon employment history, future earning capacity, educational background, or money received from friends and relatives' " [Malkani v Malkani, 208 AD3d 863, 865 [2 Dept.,2022] citing Duffy v Duffy, 84 AD3d 1151 [2 Dept.,2011].
The task of imputing income can be difficult because it "is often the case, the temporary award is based on conflicting affidavits, offering differing versions of the parties' finances and the standard of living they enjoyed during the marriage" (Konecky v Kronfeld, 2 AD3d 371, 371 [1 Deptl,2003]). This is in contrast with the full exploration of the parties' finances that a trial provides. Here, the facts and circumstances require this Court to look beyond the parties' tax returns to ascertain the father's financial circumstances in awarding temporary maintenance. 
While there are many questions related to the financial details of how the father maintained the family's lifestyle throughout the marriage, what is definitive is that the parties' lifestyle was not maintained on the father's reported income and the father never denied that the mother did not work outside the home from 2008 when the parties married until August 2020 when the pandemic-based PPE business was started. Clearly, the father's access to financial resources — either by way of his income or by way of financial resources of others at his disposal — consistently funded this family's lifestyle throughout the marriage. The father does not allege that his financial contribute to the family's budget decreased from 2020 until the time of commencement, rather, he contends that the mother's contribution dramatically increased. 
The father does not allege that the mother has higher education, technical skills, an employment history prior to the marriage or during the marriage or that she earned any income at any time in her life prior to August 2020 when she continued a financial opportunity that he started with her brother. It appears, at this time, that any additional financial resources the mother's PPE business brought into the marital estate during the pandemic may have augmented the family's baseline financial reality for a period of time but it is clear that the mother was not the monied-spouse during the marriage nor will the Court find pendente lite as the father requests that the mother is the monied-spouse for the purpose of awarding pendente lite support. If, as the father claims, the mother has "something regarding her income to hide" that is, on the facts and circumstances presented here, a final determination issue for trial [NYSCEF #144, p. 3].
For the purposes of pendente lite support, the Court finds that there is a sufficient basis to [*22]impute to the father income of $689,884.08 annually for the purposes of calculating pendente lite support. Imputed income of $689,884.08 annually is derived from the father's admission that his monthly expenses are $57,490.34 ($57,490.34 x 12 months = $689,884.08). The Court notes that to meet these expenditures his gross income would necessarily be higher; however, for the purposes of calculating pendente lite support the Court will, at this time, utilize $689,884.08.
In determining an award of temporary maintenance, the Court seeks to "ensure that a needy spouse is provided with funds for his or her support and reasonable needs pending trial. It is not to determine the correct ultimate distribution." (Jin C. v Juliana L., 137 AD3d 1063, 1064 [2d Dept 2016]; see also Brenner v Brenner, 52 AD3d 322, 323 [1 Dept.,2008]; see e.g., Albanese v Albanese, 234 AD2d 489, 490 [2d Dept 1996]). Statute, discretion, and the specific circumstances of the family before the court guide this determination (DRL § 236[B][5-a]); however, the law provides pendente lite maintenance to cover the "reasonable" expenses of the payee, but not every expense of the payee. The Court — not a matrimonial litigant — determined the reasonableness of reported expenses pendente lite. 
The father contends that some of the expenses claimed by the mother are not reasonable such as her claimed transportation expense of $1,800 monthly; however, the Court notes that the father reports in his updated Statement of Net Worth that his automotive expenses are $2,260 monthly, which includes a $1,426 monthly lease [NYSCEF #585, p. 5]. The Court also notes that the father also objects to the mother's request for monthly food cost of $1,500; however, this is commensurate with his own claim for those expense if you consider that his monthly grocery and take-out for himself and the parties' three (3) children is $6,200 ($6,200 x .25 [4 people] = $1,550) [NYSCEF #585, p. 3].
The current income cap for guideline temporary maintenance is $228,000 as of March 1, 2024 [DRL 236(B)(5-a)(b)(5)]. However, even where, as here, the payor's income exceeds the income cap, the Court still must first determine the guideline maintenance amount up to the cap [DRL § 236[B][5-a][d][1]]. The Court notes that here the payor of maintenance has temporary custody of the parties' children and, as such, under the maintenance guidelines statute, the calculation applicable is 20% of the payee's income is subtracted from 30% of the payor's income because the payor of maintenance is the custodial parent (DRL 236[B][5-a](c)(2)(a)]. The calculation for pendente lite maintenance up to the income cap is as follows:
1st calculation: 30% of payor's income up to and including the cap [$68,400] minus 20% of the payee's income [$12,000] = $56,400
2nd calculation: payor's income up to and including the cap [$228,000] plus payee's income [$60,000] equals combined income [$288,000], 40% of combined income [$115,000] minus payee's income [$60,000] = $55,200.
LOWER OF THE TWO RESULTS is $55,200 annually ($4,600 monthly).
Here, the Court finds that the guideline amount of temporary maintenance only up to the income cap would be unjust or inappropriate and that it is appropriate to award pendente lite support above the income cap.
Once the guideline amount has been determined, the court has the discretion to award maintenance above the cap — with reference to the factors outlined in DRL § 236(B)(5-a)(h). (DRL § 236[B][5-a][d][2]; see Warshaw v Warshaw, 173 AD3d 582, 583-584 [1st Dept 2019]). The DRL § 236(B)(5-a)(h) factors the Court can consider in awarding temporary maintenance above the income cap are:
(a) the age and health of the parties;
(b) the present or future earning capacity of the parties, including a history of limited participation in the workforce;
(c) the need of one party to incur education or training expenses;
(d) the termination of a child support award during the pendency of the temporary maintenance award when the calculation of temporary maintenance was based upon child support being awarded and which resulted in a maintenance award lower than it would have been had child support not been awarded;
(e) the wasteful dissipation of marital property, including transfers or encumbrances made in contemplation of a matrimonial action without fair consideration;
(f) the existence and duration of a pre-marital joint household or a pre-divorce separate household;
(g) acts by one party against another that have inhibited or continue to inhibit a party's earning capacity or ability to obtain meaningful employment. Such acts include but are not limited to acts of domestic violence as provided in section four hundred fifty-nine-a of the social services law;
(h) the availability and cost of medical insurance for the parties;
(i) the care of children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws provided during the marriage that inhibits a party's earning capacity;
(j) the tax consequences to each party;
(k) the standard of living of the parties established during the marriage;
(l) the reduced or lost earning capacity of the payee as a result of having forgone or delayed education, training, employment or career opportunities during the marriage; and
(m) any other factor which the court shall expressly find to be just and proper.
The Court rejects the father's attempt to now disavow himself of financial responsibility for the lifestyle established during the marriage for the sole purpose of benefiting in this action and prejudicing the mother's right to temporary maintenance. The Court notes that the expenses reported by the mother appear consistent with the expenses the father reports. The Court will reduce the mother's pendente lite request of $16,230 monthly by reducing pendente lite her claimed expenses for vacation and other expenses but finds that the remaining expenses appear consistent and commensurate with the father's representations as to his expenses: there is no basis for the father to assert that these expenses are reasonable for himself but not reasonable for the mother where there appears a substantial basis for finding that these expenses are consistent with the lifestyle the parties enjoyed during the marriage. As such, the Court grants the mother's request of pendente lite maintenance in the sum of $15,000 monthly. In granting this award, the Court notes that the mother already reduced her request by $5,000 monthly in her initial application because she was still earning income in 2023 but represents that she is unable to earn income other than the brief period she reported.
Potential Recoupment of Pendente Lite Maintenance
There are many questions around the parties' financial circumstances; however, what is clear is that this family was not living off the father's reported income in the tax returns presented and that whatever money the mother was able to earn importing PPE during the pandemic was also not the source of this family's lifestyle because it is not in dispute that from the date of marriage in 2008 until at least August 2020 the mother did not earn any income. As such, the lifestyle enjoyed by this family was a result of the father's access to some yet undefined financial resources. The father will have an opportunity to offer any evidence as to the mother's [*23]earning potential at trial including but not limited to his alleged unsuccessful clothing store on Kings Highway where he has allegedly worked throughout the marriage.
While recoupment of child support is not permitted under statute and caselaw, the Court notes that it is well-established that overpayment of pendente lite maintenance can be reallocated or offset against equitable distribution once the ultimate determinations are made and the maintenance guideline statute specifically provides for recalculation at trial retroactive to award (see Johnson v Chapin, 12 NY3d 461 [2009][party was entitled to credit in calculating equitable distribution award for amount that his pendente lite spousal support payments exceeded final spousal maintenance award]; see also Habib v Habib, 227 AD3d 874 [2 Dept.,2024]; Kaufman v Kaufman, 189 AD3d 31 [2 Dept.,2020]; Azizo v Azizo, 51 AD3d 438 [1 Dept.,2008]; McGovern v McGovern, 218 AD3d 1067 [3 Dept.,2023]). 
Pendente lite Child Support Award
The Appellate Division, Second Department in Gonzalez-Furtago v Furtado, 221 AD3d 975, 977 [2 Dept.,2023] detailed the well-established case law that:
"[i]n any event, the Supreme Court was not required to calculate the defendant's child support obligation pursuant to the Child Support Standards Act (hereinafter CSSA) (see George v. George, 192 AD2d 693, 693, 597 N.Y.S.2d 129; see also Domestic Relations Law § 236[B][7]). The CSSA "provides the formulas to be applied to the parties' income and the factors to be considered in determining a final award of child support. Courts considering applications for pendente lite child support may, in their discretion, apply the CSSA standards and guidelines, but they are not required to do so" (Davydova v. Sasonov, 109 AD3d 955, 957, 972 N.Y.S.2d 293 [emphasis, citation, and internal quotation marks omitted]; see Barra v. Barra, 191 AD3d 831, 832, 138 N.Y.S.3d 377). Any perceived inequity in the award of pendente lite child support can best be remedied by a speedy trial, at which the parties' financial circumstances can be fully explored (see Safir v. Safir, 206 AD3d at 844, 170 N.Y.S.3d 189; Swickle v. Swickle, 47 AD3d 704, 850 N.Y.S.2d 487).
Here, the Court finds credible at this time the mother's representation and explanation for why she is no longer earning income and consistent with the facts and circumstances before the Court including the parties' employment histories and access to financial resources, the Court finds that for the purposes of pendente lite child support it is not appropriate to impute income to the mother. 
Here, the father is pendente lite the custodial parent and the mother would pay child support to him for the parties' three (3) children.
Based on the pendente lite maintenance award and applying the CSSA calculation up to the cap of $183,000 (SSL 111-1(2)(b) the percentage for three (3) children is 29% [DRL 240(1-b)(b)(3)]. The father's income adjusted for payment of temporary maintenance would be $509,884.08 and the mother's adjusted income including temporary maintenance would be $240,000 for a combined parenting income of $749,884.08. The parent's pro rata shares would be: father, 68%; mother, 32%. As such, the mother would pay to the father the sum of $1,415.42 monthly as and for basic child support for the parties' three (3) children up to the cap of $183,000. Even if this Court were to calculate basic child support above the cap on income of combined parental income of $450,000 the noncustodial parent [the mother's] child support [*24]obligation would be $3,480.54 monthly.
Here, the mother already reduced her request for pendente lite maintenance by $5,000 monthly despite what appears to be her credible representing that she is — as was the status quo during the marriage — not earning any income and that her sole source of income will be the father's payment of pendente lite maintenance. As such, the father is already receiving the benefit of this $5,000 in reduction of maintenance that he would pay to the mother. This reduction far exceeds the presumptively correct CSSA calculation even if applied to a cap of combined parental income of $450,000.
The Court will order the mother to pay to the father the statutory minimum of $25.00 monthly in pendente lite child support. " . . . [A]ny perceived inequalities in pendente lite maintenance [and child support] can best be remedied by a speedy trial where parties' financial circumstances can be fully explored" (Safir v Safir, 206 AD3d 842, 844 [2 Dept.,2022]). The father unilaterally left the mother without access to a home or income while he still enjoys the pre-commencement lifestyle.
Pro Rata Statutory Add-Ons
The Court finds that pendente lite any statutory add-ons (DRL 240[1-b][c][4]) will be paid as follows: plaintiff-father, 100%; defendant-mother, 0%. This appears consistent with the status quo during the marriage and the parties' historic and current economic realities (Safir, 206 AD3d at 844). Additionally, the Court notes that the father concedes that his father pays for some of the children's expenses although it is currently unclear which expenses the grandfather pays. There would be no basis for the Court to order the mother to be pro rata financially responsible for expenses that the father has offered no explanation for how he pays or that he contends are paid by someone else [NYSCEF #143, p. 16]. This issue as well as any claim for retroactive reallocation may be made at trial. The mother's request that the father continue to pay the family's health insurance is granted.
Mother's Request for Automotive Insurance
It appears that the mother's request that the father maintain her automotive insurance is moot since she concedes that at this time her driver's license is suspended and/or that she does not have an automobile.
Pendente Lite Support Award
The father shall pay to mother the sum of $14,975.00 pendente lite maintenance commencing on the 21th of May 2025 and continuing the 21th of each month (the pendente lite award of maintenance [$15,000] less the monthly statutory child support [$25.00] = $14,975.00) retroactive to the date of application.
Reallocation of Pro Rata of Court Appointed Neutrals
The prior court orders appointing neutrals and experts — including but not limited to payment of the attorney for the children and supervised visitation — in this matter are hereby amended to reflect the parties' pro rata shares as determine herein for any outstanding balances and/or future incurred costs. In doing so, the Court recognizes that the mother has previously been paying a vastly higher pro rata share. The parties shall have an opportunity to seek reallocation of previously paid costs associated with court-appointed neutral and experts at trial. The Court finds that future incurred court appointed neutral costs shall be paid as follows: plaintiff-father, 100%; defendant-mother, 0%. 
Retroactivity
The Court notes that an award of maintenance and child support is effective as of the date [*25]of application (see Domestic Relations Law § 236 [B][6][a]; see also Elimelech v. Elimelech, 58 AD3d 672, 874 N.Y.S.2d 490 [2 Dept., 2009]; Evans v. Evans, 57 AD3d 718, 870 N.Y.S.2d 394 [2 Dept., 2008]. "Courts have continuing jurisdiction to modify or vacate support orders until they are completely satisfied, except that they have no discretion to reduce or cancel arrears of child support which accrue before an application for downward modification of the child support obligation" (Dembitzer v. Rindenow, 35 AD3d 791, 828 N.Y.S.2d 139 [2 Dept., 2006] [quoting Hasegawa v. Hasagawa, 290 AD2d 488, 490, 736 N.Y.S.2d 398 [2 Dept., 2002]; Domestic Relations Law section 236[B][9][b]). The mother's date of the pendente lite application was September 18, 2023. As such, the sum of retroactive pendente lite maintenance support due to the defendant is $303,243.75 ($3,743.75 weekly x 81 weeks [FN10]
= $303,243.75 retroactive pendente lite maintenance) with a credit for any support payments made by check or other negotiable instrument. Here, the father did not allege that he has paid any direct support to the mother.
Retroactive sums due by reason of this award shall be paid by plaintiff to defendant, together with the monthly maintenance support obligation, in the sum of $1,000.00 monthly pendente lite (see Domestic Relations Law § 236 [B][6][a]). (See Mosso v. Mosso, 84 AD3d 757, 924 N.Y.S.2d 394 [2 Dept., 2011]).
The father's date of the pendente lite application was December 1, 2023. As such, the sum of retroactive pendente lite child support due to the father is $1,900.00 ($25.00 monthly x 76 weeks [FN11]
= $1,900.00 retroactive pendente lite child support) with a credit for any support payments made by check or other negotiable instrument. Here, the father does not dispute the mother's claim that she has made direct payment for the children's cellphone service and devices throughout this litigation. The father may seek retroactive child support at time of trial and the mother may provide an accounting of any direct payments.
Return of Jewelry and Clothing
The mother asserts that on the record on August 4, 2023, the father through counsel agreed to return her "jewelry and clothing" but despite several e-mails thereafter, these items have not been returned to her. The father avers that the mother took all her personal items from the home previously but contends that the mother has "returned nothing of mine" [NYSCEF #143, p. 13]. Neither party requested the return of specific items of personal property in their moving applications. The mother's order to show cause did not detail with specificity what items she sought returned nor did she detail this in her supporting affidavit. The father's cross-motion did not include a prayer for relief related to return of personal property at all rather he asserts in his supporting affidavit that the mother has not returned unspecified items to him. As such, the parties' generalized requests for return of unspecified personal property is denied without prejudice.
The ultimate issue of the return of any personal property and/or equitable distribution is an issue that may be addressed as part of the trial on the financial issues between the parties where each party will be able to offer sworn testimony and any admissible evidence subject to cross-examination.
Counsel Fees
Based on the written decision dated March 27, 2025 [NYSCEF #596], the Court granted the mother's prior co-counsel's application to be relieved [motion sequence #15]; however, because the mother still has an attorney of record, there was no basis for a stay pursuant to CPLR 321(c).
This Court issued a partial decision and order dated March 27, 2025 denying as moot the mother's interim counsel fee application seeking $125,000 because it was based on affirmation of services, retainer and billing records from a prior attorney who had not represented her since November 2023 [NYSCEF #597]. The Court noted that the finding that the prior application for counsel fees was moot was without prejudice for any incoming counsel that defendant retains to make an application for counsel fees. 
The Court again notes that the mother represented at oral argument that she has incurred more than $560,000 in legal fees related to this matter and the father represented that he had paid more than $1,457,000 in counsel fees [February 28, 2025 oral argument, p. 37]. This is an astonishing amount of money especially considering that both parties claim minimal income.
The Court rejects the father's contention that the mother is the monied-spouse and that he should not be required to pay any counsel fees to her [NYSCEF #143, p. 22]. 
There is no basis for a stay of this litigation given that the mother still had an attorney of record after prior co-counsel was relieved. The Court notes that Mr. Nachimovsky, Esq. represented on the record during oral argument on the application to be relieved that he believes that he lacks sufficient matrimonial experience to represent the mother in this litigation without experienced matrimonial co-counsel. 
The father is the monied-spoused; however, the mother does not have a procedurally sufficient application for pendente lite counsel fees before the Court. The Court notes that a notice of appearance was filed on April 28, 2025 by Robert M. Wallack, Esq. [NYSCEF #617].
The Mother's Request for Jewish Religious Dues
The mother's application requesting that the father pay Jewish religious dues is denied without prejudice and may be addressed at trial. 
Conclusion
The mother's order to show cause [motion sequence #2] is granted to the extent detailed herein.
The father's order to show cause [motion sequence #3] is granted to the extent detailed herein.
All relief not specifically granted is denied.
This shall constitute the decision and order of the Court.
ENTER:
Hon. Jeffrey S. Sunshine
J. S. C.

Footnotes

Footnote 1:On January 30, 2025, after oral argument, the Court determined extant motion sequences #1 [referred to trial court]; #4 [referred to trial court]; #11 [denied]; #12 [denied as moot]; #14 [referred to trial court]. Motion sequence #15 was subsequently granted after oral argument on February 25, 2025 by written order.

Footnote 2:It appears that of these 1,640+ tests only six (6) were completed late, usually within a few minutes or an hour of the designated time. All of the alcohol tests appear to have been negative [NYSCEF #550].

Footnote 3:The mother contends in her Net Worth Statement "$5,000 minimum amount required for 1 bedroom now" and asserts that she has been living out of her commercial office space with a monthly rental of $3,200 but that she is in four (4) months arrears [NYSCEF #578, p. 2].

Footnote 4:The mother contends that this includes the children's devices.

Footnote 5:The mother contends that her dry-cleaning cost is high because it includes laundry service because she has no where to wash her clothes in the commercial space.

Footnote 6:The mother represents that this includes transportation to and from supervised visits and to her parent's home in Chicago.

Footnote 7:The mother notes that this includes counsel fees for "multiple litigations including civil suit against Plaintiff's father and family court actions".

Footnote 8:From the mother's initial Statement of Net Worth in 2023.

Footnote 9:Nanny annually $87,720 + tutoring for eldest child annually $77,400 = $165,120.

Footnote 10:September 18, 2023 to October 1, 2023 [2 weeks] + October through December 2023 [3 months] + January through December 2024 [12 months] + January through April 2025 [4 months] + May 1-21, 2025 [3 weeks] = 81 weeks.

Footnote 11:September 18, 2023 to October 1, 2023 [2 weeks] + October through December 2023 [4 months] + January through December 2024 [12 months] + January through May 2025 [5 months] = 20 months, 2 weeks = 82 weeks.